## ETTENHEIMER *vs.* HEFFERNAN and others.

The statutes which enable resident aliens to take and hold real estate in this
state apply only to such as have purchased the land claimed by them, or
have taken a conveyance thereof, or to whom the lands have descended, or
been devised.

T. devised certain land to his wife, and died in 1868. His wife died in 1869,
without making any will, and without having disposed of the premises in
any manner. T. and wife were naturalized citizens, and at Mrs. T.'s death
her relations were aliens, and with two exceptions—J. H. and C. H., her
brother and sister—non-residents of the United States. In Sept. 1869,
C. H. leased the premises to J. H. until Nov. 1, 1870. In 1870, the legisla-
ture passed an act releasing the interest of the state in said lands to C. H.
In an action against J. H. and C. H., brought to foreclose a mortgage upon
the premises, executed by T.;

*Held,* 1. That on the death of Mrs. T. the fee passed to some person, as heir,
or to the state. That it could not remain in abeyance; and there being no
person who could take as heir, at her death, it vested instantly in the state.

2. That no proceedings on the part of the state were necessary, in order to perfect its title under the escheat.

3. That J. H. had no color of title; and as against him the state was not under the necessity of instituting any proceedings to establish its title by escheat.

4. That J. H. had no interest in the land entitling him to an assignment of the mortgage; and that a judgment for foreclosure and sale was correct.

Although, when a citizen dies without a will, the presumption may be that he leaves some person who is his heir and entitled to take any land of which he may have died seized, by descent, yet when it appears that the person claiming to be heir is an alien, he cannot, for that reason, take by descent; and no presumption can be indulged, in his favor.

APPEAL, by the defendants, from a judgment of foreclosure and sale.

On the 2d March, 1857, Vincent Trafford was owner in fee of a farm of land in the town of Lewiston, in the county of Niagara, containing 153 acres of land, and being indebted to the defendant in the sum of $6,000, gave to him a bond conditioned for the payment of said sum in ten annual instalments from the date of said bond, with interest semi-annually; and to secure the payment of said sum he and his wife executed and delivered to the defendant a mortgage on said land, which mortgage became a lien thereon.

Trafford devised said land to his wife, Johanna, and died in April, 1868. His wife died in August, 1869, without making any will, and without having disposed of the premises in any manner.

Trafford and wife were naturalized citizens, and at Mrs. T.'s death her relations were aliens, and, with two exceptions, non-residents of the United States. The persons who were related to her, and who resided in the United States, were John Heffernan and Catharine Harrold, her brother and sister. These persons were living with Mrs. T. at her death, and have continued to live on the farm, of which she died seized, ever since.

In September, 1869, Catharine leased the said premises to John Heffernan until 1st Nov., 1870. Edward Harrold married Catharine in May, 1870. On the 15th

Sept., 1869, Mrs. Harrold filed with the clerk of Niagara county, and the secretary of state, her declaration of intention to become a citizen of the United States. In Aug., 1870, John Heffernan also filed his declaration of intention to become a citizen.

In April, 1870, the legislature passed an act (*Chap.* 393 *of the Laws of that year*) releasing the interest of the state in said land to Mrs. Harrold.

This action is brought to foreclose the aforesaid mortgage, and Heffernan and Mrs. Harrold are parties defendants. The issues were referred to a referee.

Heffernan alone defends the action. He claims to be tenant in common with Mrs. H. of said premises, and alleges that he offered to pay to the plaintiff the amount due on said bond and mortgage provided the plaintiff would accept the same and assign to him the bond and mortgage; that the defendant refused to do so. He offers in his answer to pay, and asks as affirmative relief that plaintiff, upon being paid the amount due, be adjudged to assign said securities to him.

Evidence was given by several witnesses, on the trial, as to proceedings taken by Mrs. H. to remove Heffernan from said premises, and the circumstances attending his entry and occupation of said premises, but the referee found no facts in relation to these matters, nor in relation to the Heffernans' propositions and offers to plaintiff to redeem said mortgage. Hence the court laid those matters out of view in the decision of this appeal.

The referee decided as matter of law, amongst other things, that on the death of Mrs. Trafford the land escheated to the state, there being no persons capable of taking by descent from her. That the title of the state became perfect immediately on the death of Mrs. T., without office found; that the act of the legislature conveyed to Mrs. H. a valid title to said land; and that John Heffernan had no interest whatsoever in the land.

Judgment of foreclosure and sale was ordered, and from that judgment the defendants appealed.

*By the Court,* MULLIN, P. J.   A vast and very interesting field is opened for discussion by the points of the respective counsel in this case, but it is not, in our view of the case, necessary to enter upon it.

The defence must fail if either of two propositions can be held to be established.   These are,

1st. That the defendant Heffernan has no interest in the land entitling him to demand an assignment of the mortgage; or,

2d. That the title in the state was perfect on the death of Mrs. T. without proceedings to perfect the escheat.

The statutes which enable resident aliens to take and hold real estate in this state apply only to such as have purchased the land claimed by them, or have taken a conveyance thereof, or to whom the lands have descended, or been devised.

Section 1 of chapter 115 of the laws of 1845 is as follows: "Any alien resident of this state, who has heretofore purchased and taken, or who may hereafter purchase and take, a conveyance of any lands," &c., "in this state, or to whom any lands or real estate has been or may be hereafter devised before filing affidavit," &c., "may hold the same," &c.

Heffernan held under neither of these modes of acquiring title, and is not within any of the provisions of those statutes.   (4 *Statutes at Large,* 294 *to* 304.)

On the death of Mrs. T. the fee passed to some person as heir, or to the state.   It could not remain in abeyance; and there being no person who could take as heir at her death, it vested instantly in the state.

No proceedings on the part of the state were necessary in order to perfect its title under the escheat.   This was directly decided in *McCaughal* v. *Ryan,* (27 *Barb.* 376,) and the decision is binding upon us as authority,

unless it is in opposition to well settled principles of law, supported by well considered cases; or unless the opposite principle has become a rule of property, which has been acted upon for so long a time that it would constitute titles to property to such an extent as to render it dangerous to bring it even into doubt. (4 *Kent's Com.* 423–5.)

We are referred to *Jackson* v. *Adams*, (7 *Wend.* 367,) as establishing the proposition that the state cannot convey escheated land, so as to vest any title in the purchaser, until after office found. And it does directly so hold.

We must follow, in this conflict of decisions, the latest one; especially as it is supported by so distinguished authority as that of Chancellor Kent. Besides this, it seems to be supported by the English cases as well as by a large number in this country, referred to by the respondent's counsel in his brief.

It is said by Comstock, J., in *Wright* v. *Saddler*, (20 *N. Y.* 320, 326,) that at common law, a deed to an alien vested in him the title to the lands conveyed "subject to a defeasance or forfeiture in favor of the state;" and in such case the state could not convey the land under its title by escheat, so as to divest the title of such purchaser, until office found, or other proceedings of that nature.

Heffernan has no color of title to bring him within the rule of the common law.

If a mere intruder without any color of right or claim can compel the state to institute proceedings to establish the escheat, it would be at variance with the practice and understanding of the profession, so far as my observation has gone.

When a citizen dies without a will, the presumption may be that he leaves some person who is his heir and entitled to take any land he may have died seized of, by descent. When, however, it appears that the person

claiming to be heir is an alien, he cannot, for that reason, take by descent. No presumption can be indulged in his favor.

In *Mooers* v. *White,* (6 *John. Ch.* 360,) the chancellor held that an alien cannot take land by descent; and though an alien may take by purchase or devise and hold until office found, yet on his death the land will escheat to the people without any inquest of office found.

It is not necessary, in this case, to go the length of deciding that an alien who acquires land by purchase or devise can be removed by the state, without first instituting proceedings to establish the escheat. It is enough that it is not necessary to institute such proceedings against one who being an alien or not authorized to take and hold real estate, claims the land by descent.

It may be said that the alienage can only be taken advantage of by the state, and that until the claimant is made a party to the proceedings to declare the escheat, it cannot be known whether he is, or is not, an alien; and hence in all cases there is a necessity for the institution of proceedings by the state.

However this may be as between the state and the claimant, the principle has no application to cases like the one before us.

The mortgagee had the right to proceed and foreclose his mortgage. He made, as he had a right to do, Heffernan and Mrs. Harrold parties, as they claimed an interest in the land. H. claims the right to redeem the mortgage, and asks it as affirmative relief. The plaintiff must either yield to this claim or refuse it and put him on proof of his right.

It is H. himself that assumes the burthen of proving his interest in the estate, and he does it by proving that when the estate descended he was an alien, not then nor for months afterwards, authorized to hold real estate.

Under these circumstances, the validity of his right

to redeem is directly in issue ; and it is entirely certain that he has no color of title, and as against him, the state was not under the necessity of instituting any proceedings to establish its title by escheat.

It has been suggested that it is possible that as against an alien claiming title by purchase or devise—and it may be against a person who is *prima facie* capable of acquiring title by descent—the state must proceed and establish the escheat before it can remove him, or convey the title.

The case of *Jackson* v. *Adams* would be in harmony with this view of the law. In that case the defendant Adams was a mere intruder, but whether an alien, does not appear. In the absence of proof that he was, the presumption would be that he was a citizen; and as against a person in possession, capable of acquiring title, there must be an inquest of office.

This was not the view of Sutherland, J., who wrote the opinion in the case cited, because he says, "The people cannot enter upon the possession of an alien without this [inquest of office] judicial proceeding."

But the opinion thus expressed was not called for by the case, and is, with all respect, unsupported by authority. The chancellor, in *Mooers* v. *White*, (*supra*,) holds that in the case of an alien dying who has taken by purchase in his life, the title vests in the state, on his death, without office found ; so that there is clearly one case in which it is not necessary for an inquest of office, as against any person alien or citizen.

I have given more consideration to this part of the case in order to discover, if I could, some ground on which the judgment of the referee could be supported without overruling *Jackson* v. *Adams*. It may be that that case has become a rule under which titles may have been transferred, and it ought not, for that reason, to be disturbed. It seems to me the judgment may be

affirmed without disturbing the principle decided in the case of *Jackson* v. *Adams.*

I am therefore of opinion that the judgment should be affirmed, with costs to be paid by the appellant.

Judgment affirmed.

