CHARLES WUNDERLE *et al.*

*v.*

CATHARINE WUNDERLE.

*Filed at Springfield, January 18, 1893.*

1. LAW OF DESCENTS — *who may inherit — non-resident aliens — sec. 1, chap. 39, R. S.* If a citizen of the United States dies intestate seized of land in this State, leaving no issue, but leaving a widow, who is a resident citizen, and a brother and sister, who are non-resident aliens and incapable of taking by inheritance, and no other kindred capable of taking are shown, the widow, under clause 6 of section 1 of chapter 39 of the Revised Statutes, will take the whole of the land as the sole heir. The kindred referred to in such statute refers to such kindred as are capable of inheriting.

2. SAME — *subject to legislative control.* Citizens of the United States are not deprived of the right to transmit their lands by devise or descent merely because certain of their kindred, who are non-resident aliens, are declared to be incapable of inheriting real estate. The law-making power can direct who shall be regarded as heirs, and where land shall go in default of heirs. When a subject or citizen dies intestate, the presumption of law is that he has heirs capable of inheriting.

3. SAME — *legislative power — law at the time of descent cast — vested rights.* Rules of inheritance are the creatures of municipal or civil law, and except as to rights already vested, may be changed and modified at pleasure. The legislature has power to change the course of descent, and such change will operate instantly upon all estates which may subsequently descend. The law existing at the·time of descent cast governs the right to inherit. A mere expectation of property in the future is not considered a vested right.

4. Neither citizens nor aliens have vested rights in the estates of their living kindred. But aliens who had acquired lands in this State before the act of 1887 went into effect, had vested property rights which could not be confiscated or taken from them.

5. SAME — *common law — aliens incapable of taking by inheritance.* The right of inheritance is an incident of allegiance or citizenship, and an alien can not take lands by descent nor transmit them to others as his heirs, by the common law. By that law aliens had no inheritable blood and were incapable of taking by inheritance.

6. ALIENS — *taking lands by act of parties — title at common law.* At common law, though aliens could not take by operation of law, they could take by the act of the parties. Not taking by descent, they could take by grant or devise until "office found;" that is to say, an alien could hold lands conveyed or devised to him until it was ascertained by inquiry or inquest of office whether or not such lands belonged to the sovereign by reason of the alienage of the holder.

7. Hence it is generally held that in the absence of express statutory provisions to the contrary, an alien's title to land purchased by him or devised to him, is valid against everybody but the State, and can be divested only by "office found" or by some other act or proceeding taken by the State for the purpose of acquiring possession.

8. ESCHEATS — *at common law — and under Alien act of* 1887. The act of 1887 in enacting that "a non-resident alien ＊ ＊ ＊ shall not be capable of acquiring title to, or taking or holding any lands or real estate by descent," is merely declaratory of the common law. By that law, if a man leaves no other relatives but aliens, his lands will escheat to the sovereign without office found. In such case a proceeding in the nature of office found is not necessary to vest in the sovereignty the title to land escheated for want of heirs. But a proceeding may be required, not to give title, but for information of title already passed.

9. Such a proceeding is the Illinois statute in regard to escheats, the first section of which declares, among other things, that the estates of persons dying seized of real estate without any devisees or heirs capable of inheriting the same, shall escheat. Titles by escheat must be established in accordance with the provisions of this statute.

10. As under the act of 1887, the lands of a deceased intestate in this State can not descend to his non-resident alien kindred, they will escheat to the State or county, if he leaves no resident kindred capable of inheriting.

11. If a citizen of this State dies intestate leaving lands in the State, and his next heirs are aliens who can not take, the inheritance will descend to the next of kin who is competent to take, in like manner as if no such aliens had ever existed, and the lands will not escheat.

12. COMMON LAW — *how far in force in this State.* The common law of England, so far as applicable and of a general nature, and also all statutes or acts of the British Parliament made in aid of and to supply the defects of the common law prior to the fourth year of James the First, are in force in this State, except so far as they are changed by legislative authority.

13. REAL ESTATE — *title passes according to the lex rei sitœ.* It is a general rule of the common law that the title to real property must be acquired and passed according to the *lex rei sitœ.* This rule not only applies to alienations and acquisitions made by the act of the parties, but also to estates and rights acquired by operation of law. And the descent and heirship of real estate are governed by the law of the country where it is located.

14. This principle, originally applicable between countries entire r foreign to each other, prevails as among the States of the Americ Union, and from it results the doctrine that the title of aliens to lanu within the limits of the several States is a matter of State regulation.

15. TREATY — *effect on conflicting statutory provisions.* While it is true that the right of foreigners to acquire and hold title to real estate is entirely dependent on the laws of the State in which the land is situate, it is also true that the State law must give way, if it conflicts with any existing treaty between the government of the United States and the government of the country of which such foreigner is a subject or citizen.

16. SAME — *removing statutory disqualification to hold real estate.* But the treaty which will suspend or override the statute of a State, must be a treaty between the United States and the government of the particular country of which the alien, claiming to be relieved of the disability imposed by the State law, is a citizen or subject. A treaty with some other country of which such alien is not a citizen or subject can not have the effect of removing such disability.

17. Under article 6 of the Federal constitution, provisions in regard to the transfer, devise or inheritance of property are fitting subjects of negotiation and regulation by the treaty-making power of the United States, and such a treaty will control or suspend the statutes of the States whenever it differs from them. Hence, if the citizen or subject of a foreign country is disqualified under the laws of a State from taking, holding or transferring real property, such disqualification will be removed, if a treaty between the United States and such foreign government confers the right to take, hold or transfer real property.

18. The disability imposed upon non-resident aliens by the first section of the act of 1887 is not removed by any existing treaty between

the United States and the Grand Duchy of Baden, or between the United States and the German Empire.

19. STATUTES CONSTRUED — *act of 1887 — non-resident aliens holding real estate.* By the act of 1887, relating to aliens, the non-resident alien is not merely forbidden to "acquire or own, hold or possess," but it is expressly declared that he "shall not be capable of acquiring title to or holding" real estate. *Held,* that this language could not be construed as permitting the non-resident alien to hold a defeasible title, subject to be divested only by forfeiture in favor of the State.

20. The act specifies what aliens may hold defeasible titles, such as the heirs of aliens who had theretofore acquired lands, and resident aliens declaring their intentions to become citizens, and creditor aliens seeking to enforce liens on judgments. From this it must be presumed that the legislature intended to withhold such right from the aliens not embraced in those classes, and who are declared to be incapable of taking or holding.

21. SAME — *act of 1887 — alien heirs of citizens — exception in section 1.* The act of 1887, relating to aliens, can not be so construed as to extend the exception in section 1 to the alien heirs of citizens, as well as the heirs of aliens, and thereby give the non-resident alien kindred of citizens the right to take lands by descent or devise, and hold the same for three or five years so as to make sale or acquire an actual residence in the State.

22. The exception in section 1 of the act of 1887, relating to non-resident aliens, should not be so construed as to embrace others than the class of persons therein specifically designated.

23. The words " heirs or aliens who *may* acquire lands," etc., in section 1 of the act of 1887, relating to aliens, refer to the case specified in section 8 of the act, where a non-resident alien owning lands in this State at the time the act took effect, disposes of the same during his lifetime, and takes security for the purchase money, and afterward he " or his non-resident heirs " again obtain the title on sale made under a judgment or decree rendered in order to enforce the payment of any part of such purchase money. These words of exception do not apply to heirs of a citizen and resident of the United States.

24. SAME — *a statute will be construed as passed by the legislature.* It is not the province of the judiciary to make laws, but to construe and interpret them and pass upon their validity. A construction will not be adopted which will make the legislature say what it has not said. A construction of a statute, variant from the strict and literal meaning, is only justified upon the ground that it effectuates the intention of the legislature manifestly disclosed by a consideration of the whole context.

25. CONSTITUTIONAL LAW — *whether special legislation. The Alien act* of 1887 is not a special law within the meaning of the State constitution. It is sufficiently general in its terms to embrace all non-resident

aliens, except those included in the exception specified in section 1 thereof. A limitation of its general application arising from the exercise of the treaty-making power by the general government does not make it special within the meaning of the State constitution.

26. If that act had, in express terms, excepted from its operation those citizens or subjects of foreign countries, to whom the right to take and hold lands in the United States had been secured by existing treaties, it would still be a general law as to a large number of non resident aliens not embraced within the class so excepted.

27. The law of 1887, relating to non-resident aliens, does not contravene the constitutional prohibition of special legislation changing the law of descents.

28. The object of the exception in section 1 of the act of 1887 was to save the rights of those aliens who had already acquired lands in this State, subject to the laws thereof ; that is to say, subject to the provisions of the act of 1851, and the embodiment of such reasonable exception in the act of 1887 did not make that act a special law within the meaning of the State constitution.

29. Same — *general and uniform laws.* Laws are general and uniform when alike in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of those within the scope of their operation.

30. It is not clear that the constitutional prohibition against special legislation was intended to refer to the operation of State laws upon different classes of foreigners, but only to their operation upon different classes among the citizens of the State; and, more especially, is it not clear that discrimination among different classes of non-resident aliens was intended to be forbidden by the prohibition of special legislation changing the law of descent.

31. Same — *statute upheld unless clearly unconstitutional.* A statute ought to be upheld by the courts unless it is clear that it conflicts with the constitution.

Appeal from the Circuit Court of Jersey county ; the Hon. George W. Herdman, Judge, presiding.

This is a bill filed on June 22, 1891, in the Circuit Court of Jersey county, by Charles Wunderle and Veronica Schaeffer, the appellants herein, against Catharine Wunderle, the appellee, asking for a partition of 116 acres of land in said county, subject to the widow's dower and homestead. The bill alleges that Alexander Wunderle, the brother of the appellants, the complainants below, was, in his lifetime and at the time of

his death, the owner seized in fee of said land, and, being so seized, died intestate on January 2, 1891, leaving appellee, the defendant below, his widow, and the complainants, his brother and sister, as his only heirs at law; that by said death the defendant and the complainants became seized in fee as tenants in common of said land by descent from said Alexander Wunderle; that the defendant, as widow of the deceased, became seized in fee of one undivided half of the premises, and entitled to dower in the other half; that the complainants are entitled each to one undivided one-fourth of the land, subject to the dower and homestead rights of the widow; that said dower and homestead have never been set off; that no other persons than said complainants and defendant have any interest in or title to said premises or any part thereof.

The defendant filed her plea to the bill, alleging that at the time of his purchase of said land, and prior and subsequently thereto, and at the time of his death, the said Alexander Wunderle was a citizen and a resident of the United States; that the complainants were at the time of his death and have ever been and are now, as to the United States, non-resident aliens; that neither of the complainants is now, or ever was a resident or citizen of the United States, but that both of them were born, have ever resided and still continue to reside in the Grand Duchy of Baden, and were at the time of the death of Alexander Wunderle and are now subjects of the German Empire; that by an act of the legislature of Illinois, approved June 16, 1887, in force July 6, 1887, and at the time of said death, it was provided among other things that non-resident aliens should not be capable of acquiring title to, or holding, any lands, or real estate, in this State by descent, etc., except, etc., reference being made to said act, etc., and the defendant pleading the same to said bill, etc.

The cause was heard by the Circuit Court upon the bill and plea, and that court found that the plea was sufficient in law to bar the right of the complainants to the relief prayed for,

and dismissed the bill with costs, etc. From the decree so entered by the Circuit Court the present appeal is prosecuted.

Mr. J. G. KOESTER, Mr. WILLIAM VOCKE and Mr. JULIAN W. MACK, for the appellants:

The statute of 1887 relating to aliens is void because it is in conflict with various treaties made by the government of the United States, which are by the constitution declared to be a part of the supreme law of the land. Const. of the U. S., Art. VI; *Hauenstein* v. *Lynham*, 100 U. S. 483; 8 Opinions Atty.-Gen., p. 417; *Chirac* v. *Chirac*, 2 Wheat. 259; *Ware* v. *Hylton*, 3 Dall. 199; *People* v. *Gerke*, 5 Cal. 381.

It is in conflict with a treaty made with the German Empire, and violates the principles of international comity. Treaty between the U. S. and German Empire, proclaimed December 11, 1871, Art. 10, last paragraph; Wheaton's Intern. Law, par. II, chap. II, sec. 4; Field's Intern. Code, chap. 26, secs. 334–336.

Being void as to citizens of those countries with which the United States has entered into treaties, but affecting citizens of other countries with whom no treaty relations exist, it operates as a special law changing the statute of descent as against the latter.

. Affirming the decree of the court below would require a construction of the statute unjustly discriminating between the heirs of alien land owners and the alien heirs of such as are citizens, in this, that it would extend a qualified right of inheritance to the former class, while disqualifying the latter. See Const. of Ill., Art. IV, sec. 22; *People* v. *Millett*, 117 Ill. 294.

In that view the law would take away vested rights and impair the obligation of contracts in violation of the organic law of the Nation as well as of the State of Illinois.

The construction of the statute should be a liberal one so far as it affects private rights.

Though apparently the right of inheritance by aliens is limited to property of alien ancestors, yet the statute should be construed so as to extend the benefit of alienation likewise to the alien heirs of our citizens. This construction is demanded, in view of the construction heretofore given to the alien and other laws in this State.

As to the common law of England relating to aliens, see Blackst. Com., B. I, p. 371, and B. II, pp. 249–251, Cooley's Ed.

As to the common law of Virginia and Illinois, see 1 Minor's Inst. 144 ; 1 Tucker's Com. on Blackst. 65 *et seq.; Hubbard* v. *Goodwin,* 3 Leigh, 508.

Statutes of Illinois : Territorial Act of Sept. 17, 1807 ; Illinois Session Laws, 1819, Feb. 6, p. 6 ; Illinois Session Laws, 1827, Feb. 7, p. 49 ; Illinois Session Laws, 1829, Jan. 23, p. 207 ; Revised Statutes, 1845, chap. 4 ; Illinois Session Laws, 1851, Feb. 7, p. 149 ; Illinois Session Laws, 1887, June 16, p. 5 ; Illinois Session Laws, 1891, p. 3.

In order to arrive at the proper interpretation of a statute the courts will, in doubtful cases, strain the meaning of words, transpose or interpose words, change their ordinary meaning or insert modifying clauses. See *Kilgour* v. *Gockley,* 83 Ill. 109 ; *County of Perry* v. *Jefferson,* 94 id. 214; *People* v. *Hoffman,* 97 id. 234.

Forfeitures are never enforced by the courts, unless the legislature has a plain constitutional right to enact them, and, exercising this right, has enacted them in plain and unequivocal language.

The statute is loosely drawn, and taking away private rights should be most carefully considered.

The plea offers no defense to the bill, because appellants have, at least, a defeasible title. *Carlow* v. *Aultman Co.,* 28 Neb. 672 ; *Bone* v. *Canal Co.,* 5 Atl. Rep. 751 ; *Hickory Farm Oil Co.* v. *Railroad,* 32 Fed. Rep. 22.

Mr. D. D. GOODALL, for the appellee :

While the territory now comprising the State of Illinois belonged to Virginia, the common law prevailed. Under that law an alien could acquire land by purchase or devise and hold it until office found.

But in no case could an alien take real estate by descent. He had no inheritable blood. The title could not pass to or vest in him even for an instant, and if a citizen or subject died leaving no relations other than aliens, his estate escheated to and vested in the State without office found. Blackstone's Com., title Escheat, 6 ; *Crane* v. *Reeder,* 21 Mich. 24 ; 4 Am. Rep. 430.

In section 1 of the statute of 1887 the enacting part declares that a non-resident alien, etc., shall not be capable of acquiring title to or taking or holding any lands or real estate in this State by descent, devise, purchase or otherwise. This is not simply a provision that a non-resident alien " shall not acquire title," as appellants would have it, but an enactment that he shall not be capable of acquiring title, etc., thus clearly and explicitly making non-resident alienage an impediment and a bar to the acquisition of title in the cases designated.

Under this provision no title to lands or real estate whatever can pass to, vest in, or be taken by a non-resident alien for a single instant. Nor can he have or take, as appellants contend, a defeasible or any estate therein.

This will further appear from a consideration of chapter 49, R. S., title Escheat, which provides : " That if any person shall die seized of any real or personal estate without any devise, and leaving no heirs or representatives capable of inheriting the same, or the devisees be incapable of holding the same, and 'n all cases where there is no owner of real estate capable of holding the same, such estate shall escheat to and vest in the county in which it, or the greater portion thereof, is situated. "

Thus the statute of escheat vests the title of real estate where there is no one capable of inheriting or holding the same in the county where it is located ; and the enacting clause of the

law of 1887 declares that a non-resident alien shall not be capable of acquiring title to or taking or holding any lands or real estate, etc., showing, we think, conclusively that, by reason of his incapacity, no title or estate, not even a defeasible one, can, under these provisions, ever vest in or be acquired, taken or held by a non-resident alien.

Without discussing the proposition of whether or not the general government has the power under our constitution to control by treaty the law of inheritance in a State, we will say that this law does not conflict with any provision of any treaty under which appellants can claim.

They are residents and subjects of the Grand Duchy of Baden, which is now a part of the German Empire, and there is no provision in any treaty between the United States · and Baden by which subjects or citizens of the one party are permitted to inherit, take or hold lands or real estate in the country of the other. Both the treaty of 1857 and that promulgated in 1870 are wholly silent upon that subject. Nor does article 10 or any other article or provision of the treaty of 1871 with the German Empire confer this right.

Baden, with the other duchies, kingdoms, principalities and free cities now comprising the German Empire, were formerly independent and sovereign. Each made its own laws and negotiated its own treaties.

As to the contention that the act is void because it affects subjects of those countries where such treaty rights exist differently from those where they do not, and thus operates as a special law changing the statute of descent and taking away vested rights, etc., we will only say that neither citizens nor aliens have vested rights in the estates of their living kindred. The maxim is well known — "*Nemo est hæres viventis.*" The power of the legislature to change the law of descent has been often exercised and never questioned, and the law existing at the time of descent cast governs the right to inherit. *Pila* v. *German, etc., Association,* 23 Fed. Rep. 700.

It is true our constitution prohibits the passage of a special law changing the law of descent, but this act is in no sense a special law. It affects all the inhabitants of the State in precisely the same manner. Nor does it become special for the reason that some foreign powers have, by treaty with our general government, secured for their subjects partial immunity from its effects. The law will stand unimpaired, though these treaty rights and privileges be respected and accorded, and " it is the duty of the court to uphold the statute where the conflict between it and the constitution is not clear." *Newland* v. *Marsh*, 19 Ill. 385 ; *Johnson* v. *R. R. Co.*, 23 id. 207.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court :

Alexander Wunderle, the owner of the land in controversy, died intestate and without issue, and left him surviving a widow, who is the appellee herein, and one brother and one sister, who are the appellants herein. His death took place in January, 1891, while the Act of 1887 hereinafter mentioned was in force. Have appellants become the owners of one undivided half of the land, subject to the widow's dower and homestead rights therein, under the laws of this State in regard to the descent of property ? The decision of this question depends upon the decision of the further question, whether the fact, that the appellants were non-resident aliens at the time of the intestate's decease, rendered them incapable of taking real estate in Illinois by inheritance.

By chapter 4 of the Revised Statutes of 1845, it was provided, that " all aliens, *residing in this State*, may take by deed, will or otherwise, lands and tenements, and any interest therein, and alienate, sell, assign, and transmit the same to their heirs, or any other persons, whether such heirs or other persons be citizens of the United States or not, in the same manner as natural-born citizens of the United States or of this State might do ; and, upon the decease of any alien having title, or interest in, any lands or tenements, such lands and

tenements shall pass and descend in the same manner as if such alien were a citizen of the United States, and it shall be no objection to any persons having an interest in such estate that they are not citizens of the United States; but all such persons shall have the same rights and remedies, and in all things be placed on the same footing as natural-born citizens and actual residents of the United States." It will be noticed that the Act of 1845 conferred the right to take lands by deed, will, or otherwise, and to alienate, sell, assign and transmit the same, upon " *all aliens residing in this State.*"

By an Act, approved February 17, 1851, the foregoing provision of said chapter 4 of the Revised Laws was amended by leaving out the words, "residing in this State," after the words, " all aliens," so as to confer the right to take lands by deed, will or otherwise, and to alienate, sell, assign and transmit the same, upon all aliens whether residing in Illinois or not. (1 Starr & Cur. Ann. Stat. chap. 6, page 264). The Act of 1851 remained in force until 1887. On June 16, 1887, the legislature passed an act, which went into force on July 1, 1887, entitled "An Act in regard to aliens, and to restrict their right to acquire and hold real and personal estate, and to provide for the disposition of the lands now owned by non-resident aliens." (Laws of Ill. of 1887, page 5; 3 Starr & Cur. Ann. Stat. chap. 6, page 60).

By the tenth section of the Act of 1887, the Act of 1851, " and all other acts and parts of acts in conflict with" the Act of 1887, are repealed. The first section of the Act of 1887, with the exception of the proviso at the end thereof in reference to "minor aliens actually residing in the United States," is as follows: " Be it enacted, * * * That a non-resident alien, firm of aliens, or corporation incorporated under the laws of any foreign country, shall not be capable of acquiring title to or taking or holding any lands or real estate in this State by descent, devise, purchase or otherwise, except that the heirs of aliens who have heretofore acquired lands in this State

under the laws thereof, and the heirs of aliens who may acquire lands under the provisions of this Act, may take such lands by devise or descent and hold the same for the space of three years and no longer, if such alien at the time of so acquiring such lands is of the age of twenty-one years, and if not twenty-one years of age, then for the term of five years from the time of so acquiring such lands, and if, at the end of the time herein limited, such lands so acquired by such alien heirs have not been sold to *bonà fide* purchasers for value, or such alien heirs have not become actual residents of this State, the same shall revert and escheat to the State of Illinois the same as the lands of other aliens under the provisions of this Act." By the use of the words, " heirs of aliens who *may acquire* lands under the provisions of this Act," reference is evidently made to the case specified in section 8 of the Act, where a non-resident alien, owning lands in this State at the time the Act took effect, disposes of the same during his lifetime, and takes security for the purchase money, and afterwards he, " or his non-resident heirs," again obtain the title on sale made under a judgment or decree, rendered in order to enforce the payment of any part of such purchase money.

The appellants do not come within the terms of the exception mentioned in section 1, because they are not the heirs of an alien, but, on the contrary, the deceased intestate, whose heirs they claim to be, was a citizen and resident of the United States at the time of his death. They do, however, come directly within the terms of the principal or enacting clause of section 1. As it is conceded, that they are and always have been residents of the Grand Duchy of Baden and subjects of the German Empire, each of them is a non-resident alien; and the enacting clause of section 1 expressly and explicitly declares, that " a non-resident alien  *  *  *  shall not be capable of acquiring title to or taking or holding any lands or real estate in this State by descent." Manifestly, therefore, the appellants are not entitled to take any portion of the lands

in controversy by inheritance from their deceased brother, if the Act of 1887, as applied to the facts of this case, is a valid law. The subject presented by the record, is the validity of the Act of 1887.

*First*, it is said, that the Act conflicts with various treaties made by the government of the United States, and particularly with a treaty made in 1871 with the German Empire.

It is a general rule of the common law, that the title to real property must be acquired and passed according to the *lex rei sitæ*. This rule not only applies to alienations and acquisitions made by the acts of the parties, but also to estates and rights acquired by operation of law. The descent and heirship of real estate are governed by the law of the country where it is located. (Story on Confl. of Laws, secs. 424, 448, 483, 509; *Stoltz* v. *Doering*, 112 Ill. 234). This principle, originally applicable as between countries entirely foreign to each other, also prevails as among the States of the American Union. From it results the doctrine, that the title of aliens to land within the limits of the several States is matter of State regulation. (Williams on Real Property — 4th ed. — page 64, note 1; Lawrence's Wheaton on International Law, page 168 n.; Story on Confl. of Laws, sec. 430; Wheaton's Int. Law (Boyd) — 3d ed. — page 132; 2 Wharton's Inter. Law Dig., bottom pages 490 and 497; Field's Inter. Code — 2d ed. — page 176). But while it is true that " the right of foreigners to hold title to real estate is entirely dependent on the laws of the State in which the land is situate," (2 Wharton's Int. Law Dig. sec. 201, page 490) it is also true, that the State law must give way if it conflicts with any existing treaty between the Government of the United States and the government of the country of which such foreigner is a subject or citizen.

Article 6 of the Federal Constitution provides, that " all treaties made or which shall be made under the authority of the United States shall be the supreme law of the land, and the judges in every State shall be bound thereby, anything in the

constitution or laws of any State to the contrary notwithstanding." In construing this article it has been held, that provisions in regard to the transfer, devise or inheritance of property are fitting subjects of negotiation and regulation by the treaty-making power of the United States, and that a treaty will control or suspend the statutes of the individual States whenever it differs from them. Hence, if the citizen or subject of a foreign government is disqualified under the laws of a State from taking, holding or transferring real property, such disqualification will be removed, if a treaty between the United States and such foreign government confers the right to take, hold or transfer real property. (*Hauenstein* v. *Lynham*, 100 U. S. 483; *Geofroy* v. *Riggs*, 133 U. S. 258; *Ware* v. *Hylton*, 3 Dall. 199; *Chirac* v. *Chirac*, 2 Wheat. 259; *Orr* v. *Hodgson*, 4 Wheat. 453; *Fairfax* v. *Hunter*, 7 Cranch, 603; *The People* v. *Gerke*, 5 Cal. 381). But the treaty, which will suspend or override the statute of a State, must be a treaty between the United States and the government of the particular country, of which the alien, claiming to be relieved of the disability imposed by the State law, is a citizen or subject. A treaty with some other country, of which such alien is not a citizen or subject, cannot have the effect of removing the disability complained of.

The objection made to the Act of 1887 is, that it does not allow non-resident aliens, who would be the heirs of citizens under the Illinois statute of descents but for their alienage, to hold real estate, which they might otherwise inherit as heirs, for such a reasonable length of time as would enable them to sell the same, and remove the proceeds of sale. In support of this objection counsel refer us to several treaties containing such provisions as the following: "Where on the death of any person holding real estate within the territories of the one party, such real estate would, by the laws of the land, descend on a citizen or subject of the other, were he not disqualified by alienage, such citizen or subject shall be allowed a reasonable time

to sell the same, and to withdraw the proceeds without molestation, and exempt from all duties of *detraction* on the part of the governments of the respective States." (Lawrence's Wheaton on Int. Law, page 167 ; Wheaton's Int. Law, 3d Eng. ed. by Boyd, pages 131–132). But the appellants are subjects of the Grand Duchy of Baden ; and counsel have referred us to no treaty with Baden, nor have we been able to find any, which contains such a provision as that last above quoted. The treaties between the United States and Baden, made in 1857 and in 1868, had reference to the extradition of criminals and to naturalization, but they contained no stipulations as to the acquisition, or transfer, or transmission of property. (Treaties and Conventions, U. S. 1776–1887, pages 41–46). On the contrary, we find it stated in one of the works on International Law, that, at a time when certain treaties were made with some of the German States by a representative of the United States, " Baden declined making any." (Lawrence's Wheat. on Int. Law, page 168, note).

It is claimed, however, that the treaty concluded on December 11, 1871, between the German Empire, of which Baden now forms a part, and the United States, contains a stipulation which should be so construed as to remove the disability imposed upon the appellants by the Act of 1887. That stipulation is embodied in Article 10 of the treaty and is as follows : " In all successions to inheritances, citizens of each of the contracting parties shall pay in the country of the other such duties only as they would be liable to pay, if they were citizens of the country in which the property is situated, or the judicial administration of the same may be exercised." (Treaties and Conventions — U. S. 1776–1887 — page 366.) This article in a treaty, made by the German Empire soon after its formation, conferred no new rights so far as the power to take, hold, or dispose of land was concerned. It merely recognized existing treaties theretofore made between the United States and certain of the German States, which became parts of the Empire

when it was formed. It did nothing more than stipulate in regard to the payment of duties in cases where treaties already in existence contained provisions upon the subject of successions to inheritances. Article 10 permitted such stipulations as had been made in the treaties of the separate States to continue in force under the treaty of the Empire, but neither that article, nor any other article of the treaty of 1871, provided that the subjects of the Empire should be permitted to take or hold real estate in the United States, except so far as the right to do so was guaranteed by existing treaties.

In *In re Thomas*, 12 Blatch. 370, in an opinion delivered by Mr. Justice Blatchford, it was held that the convention, concluded between Bavaria and the United States on September 12, 1853, for the extradition of criminals, was not abrogated by the absorption of Bavaria into the German Empire; and the learned Justice there says : " An examination of the provisions of the constitution of the German Empire does not disclose anything, which indicates that then existing treaties between the several States composing the Confederation called the German Empire and foreign countries were annulled, or to be considered as abrogated."

Our conclusion upon this branch of the case is that the disability imposed upon non-resident aliens by the first section of the Act of 1887 is not removed, so far as the appellants are concerned, by any existing treaty between the United States and the Grand Duchy of Baden, or between the United States and the German Empire; nor is the disqualification of the appellants, as declared by said Act, affected in any way by provisions in treaties between the United States and other governments than those of Baden and the German Empire.

*Second*, it is said, that the Act of 1887 is a special law, and, as such, violates section 22 of Article 4 of the constitution of Illinois, which provides, among other things, that " the General Assembly shall not pass local or special laws　*　*　* for　*　*　* changing the law of descent."

The Act is charged with being special in its character by reason of its alleged conflict with some of the treaties made by the United States with foreign governments. The contentions of counsel upon this point are: that there are treaties in force, which confer upon the subjects or citizens of certain foreign countries the right to take and hold lands in this country by descent and otherwise; that, inasmuch as the Act is overruled by these treaties as to the non-resident aliens so protected by them, its effect is to deprive the non-resident aliens not protected by the treaties of the right so to take and hold lands in the State, and to leave those who are protected by the treaties in full enjoyment of said right; that there is in this way a discrimination between the two classes of aliens; that the Act is thus special, in that it classifies aliens into those who can take by inheritance and those who cannot take by inheritance. If the law can be regarded as special, because it does not apply to aliens protected by treaties, its special character in this particular is produced by the treaties, and not by its own provisions. The Act is sufficiently general in its terms to embrace all non-resident aliens, except those included in the exception specified in section 1 as above quoted. A limitation of its general application, arising from the exercise of the treaty-making power by the Federal government, does not make it special within the meaning of the State constitution. It is general as applied to all non-resident aliens not protected by treaties. If it had, in express terms, excepted from its operation those citizens or subjects of foreign countries, to whom the right to take and hold lands in the United States had been secured by existing treaties, it would still have been a general law as to the large number of non-resident aliens not embraced within the class so excepted. Laws " are general and uniform in their operation upon all persons in the like situation, and the fact of their being general and uniform is not affected by the number of those within the scope of their operation." (*The People* v. *Wright*, 70 Ill. 388).

Moreover, a statute ought to be upheld by the courts unless it is clear that it conflicts with the constitution. It is not clear, that the constitutional prohibition against special legislation was intended to refer to the operation of State laws upon different classes of foreigners, but only to their operation upon different classes among the citizens of the State. (*The People* v. *Wright, supra; Millett* v. *The People,* 117 Ill. 294; *The People* v. *Cooper,* 83 Ill. 585). More especially is it not clear, that discrimination among different classes of non-resident aliens was intended to be forbidden by the prohibition of special legislation changing the law of descent. The right of inheritance is an incident of allegiance or citizenship. "An alien cannot take lands by descent, nor transmit them to others as his heirs, by the common law." (1 Wash. on Real Prop.— 5th ed.— marg. page 49, top page 79; 2 Kent's Com., pages 53–54; *Hauenstein* v. *Lynham, supra;* 2 Black. Com. 249; 1 Am. & Eng. Encl. Law, pages 458 to 462 and notes). At common law aliens had no inheritable blood, and were incapable of taking by inheritance. (*Heeney* v. *Trustees, etc.,* 33 Barb. 360; *Ettenheimer* v. *Heffernan,* 66 Barb. 374.) In *Dawson's Lessee* v. *Godfrey,* 4 Cranch, 321, the Supreme Court of the United States, speaking through Mr. Justice Johnson, said: "As the common law, which is the law of Maryland on this subject, deprives an alien generally of the right of inheriting, it is incumbent upon the plaintiff to establish some exception in favor of his case. But I know of no exception at common law, which gives the right to inherit distinctly from the obligation of allegiance, existing either in fact or in supposition of law." The Supreme Court of Michigan, in an opinion delivered by Mr. Chief Justice Campbell, has said: "The laws of Congress manifest a disposition to open the door as wide as possible to induce aliens to become citizens. But they show as plain an intent not to give any special privileges to aliens who do not comply with the statutes. * * * The disability of alienage had never any dependence on feudal tenures," (in this country),

" but always rested on the broader principle that States are organized for the benefit of their own people, and that those, who are not within the allegiance, can have no claim beyond what the law sees fit to give them." (*Crane* v. *Reeder*, 21 Mich. 24).

The Act is also charged with being special in its character by reason of the exception contained in that portion of section 1, which is above quoted. As the exception permits the heirs of aliens, who had acquired lands in the State before the passage of the Act, and the heirs of aliens who might acquire lands under the provisions of the Act in the manner above stated, to take such lands by devise or descent and hold them for certain periods, subject to their escheat to the State in case they should not be sold at the end of such periods, or in case such alien heirs should not become actual residents of the State at the end of such periods, it is said that a special privilege is granted to the non-resident heirs of aliens which is denied to those who would be the non-resident heirs of citizens but for the disability imposed by the Act; that, where a citizen of this country, whether such by birth or naturalization, dies owning lands in this State, and leaving kindred in a foreign country who are non-resident aliens, such kindred, though coming within the degrees of relationship authorized to inherit under the statute of descents, cannot take such lands by devise or descent under the Act, but that, where a non-resident alien owning lands before the passage of the Act, dies still owning them and leaving kindred who are non-resident aliens, such kindred, if coming within the degrees of relationship authorized to inherit under the statute, may take such lands by devise or descent and hold them for a number of years with the right to sell them. In view of this feature of the Act, counsel for appellant say : " The legislature is forbidden by the constitution from declaring that certain individuals may inherit from one part of the people, viz. : deceased aliens, and may not inherit from another part, viz. : deceased citizens." We do not regard the objection thus made to the Act as tenable.

The object of the exception now under consideration was to save the rights of those aliens, who had already " acquired lands in this State subject to the laws thereof," that is to say, subject to the provisions of the Act of 1851 as above quoted. Rules of inheritance are the creatures of the municipal or civil law, and, except as to rights already vested, may be changed and modified at pleasure. "*Nemo est hæres viventis*" is a well-known legal maxim. The legislature has power to change the course of descent, and such change will operate instantly upon all estates which may subsequently descend. The law existing at the time of descent cast governs the right to inherit. A mere expectation of property in the future is not considered a vested right, and hence " the rules of descent are held subject to change in their application to all estates not already passed to the heir by the death of the owner." (Cooley on Cons. Lim.—6th ed.—page 439; *Sturgis* v. *Ewing*, 18 Ill. 176; *Crane* v. *Reeder*, 21 Mich. 24; *Pilla* v. *German School Ass'n*, 23 Fed. Rep. 700.) It follows, that neither citizens nor aliens have vested rights in the estates of their living kindred. But aliens, who had acquired lands in Illinois before the Act of 1887 went into force, had vested property rights, which could not be confiscated, or taken away from them; and, while it is true that they acquired such lands subject to the right of the legislature to change the law of descent, yet the Act of 1851 had not only specifically authorized them " to transmit the same to their heirs," but had provided that upon their decease their lands " should pass and *descend* in the same manner as if" they were citizens of the United States; and, by the terms of the law, it could not be urged as an objection to them, that they were not citizens of the United States, but they were thereby placed upon " the same footing as natural-born citizens." Accordingly, when the legislature in 1887 repealed the Act of 1851, it evidently thought it best to so far continue the privileges of that Act to aliens who had acquired lands in Illinois under it and because of it, as to confer upon

their heirs the right to take by devise or descent a defeasible estate in such lands. We do not think that the embodiment of such a just and reasonable exception in the Act of 1887 made it a special law within the meaning of the State constitution. The observations, already made as to the exception of aliens protected by treaties from the operation of the Act, apply to the exception in favor of the heirs of aliens who had acquired lands before the passage of the Act. As to the large class of aliens not embraced in the latter exception, the law is general in its application. Its general character is also seen in the fact that it has reference to future, as distinguished from past, acquisitions of real estate. It was not necessary that citizens should be made capable of inheriting in express terms. Citizens are not deprived of the right to transmit their lands by devise or descent, merely because certain of their kindred, who are non-resident aliens, are declared to be incapable of inheriting real estate. The law-making power can direct who shall be regarded as heirs, and where lands shall go in default of heirs. (*Crane* v. *Reeder, supra.*) Where a subject or citizen dies intestate the presumption of law is that he has heirs capable of inheriting. (*Wilbur* v. *Tobey,* 16 Pick. 177.)

Our conclusion is that the Act of 1887 does not contravene the constitutional prohibition of special legislation changing the law of descent.

*Third,* it is urged that the Act of 1887 should be liberally construed, and that such liberal construction would have the effect of extending the exception named in section 1 to the alien heirs of citizens, as well as to the heirs of aliens. In other words, we are asked to so construe the exception as to give the non-resident alien kindred of citizens the right to take lands by descent or devise, and hold the same for three or five years so as to make sale, or acquire an actual residence in the State. This would involve the insertion of the words " and the alien heirs of citizens" after the words " except that the

heirs of aliens." By such a construction we would make the legislature say what it has not said. It is not the province of the judiciary to make laws, but to construe and interpret them and pass upon their validity. Counsel cite, as authority for their contention upon this point, the following cases: *Kilgour* v. *Gockley*, 83 Ill. 109; *County of Perry* v. *Jefferson County*, 94 Ill. 214; *Walker* v. *Springfield*, 94 Ill. 364, and *The People* v. *Hoffman*, 97 Ill. 234.

A careful examination of all these cases will show that, where the construction given to the words of a statute is variant from their strict and literal meaning, such construction is only justified upon the ground that it effectuates the intention of the legislature, as manifestly disclosed by a consideration of the whole context. In the *Gockley* case, an act of the legislature relieved persons under 21 years of age from the bar of a statute of limitations, provided they should bring an action within three years after the disability should cease; and it was held that females, whose minority is at an end under our laws at 18 years of age, could bring their actions within three years after reaching the latter age, because it was the manifest intention of the legislature that the action could be brought within three years after the disability of minority should cease, whether it ceased at the age of 21 years, or at the age of 18 years. In the *Jefferson County* case a mistake was made in a certain location named in the body of an act to change the county line between two counties; and the court resorted to the title of the act as avowing its object and showing the intention of the legislature. In the *Springfield* case, the word "said" was rejected and the word "the" substituted therefor in a section of a statute, because a consideration of the whole section showed that the real intention of the legislature was expressed by such substitution. In the *Hoffman* case, it was held, that the expression "*capias ad satisfaciendum*" was used by mistake in a statute for the expression "*capias ad respondendum*," because the context clearly showed

that the legislature intended to designate the latter and not the former writ.

But, here, the legislature has expressly declared that the heirs of certain aliens shall take and hold lands for limited periods subject to the privilege of avoiding their escheat to the State by a sale of them, or by acquiring an actual residence in the State, within said periods. But the Act of 1887 nowhere declares, nor is there anything on its face to indicate that the legislature intended thereby to declare, that the non-resident alien kindred of citizens should so take and hold lands for certain periods. The evident design of the legislature was to prevent the accumulation of landed estates in the hands of non-resident aliens. The latter are permitted to acquire and hold personal property in the same manner and to the same extent as natural-born citizens. The Act holds out inducements to resident aliens to become citizens by granting them the privilege of acquiring lands and retaining them for certain periods after declaring their intentions to become citizens, and by providing for escheats to the State in case of failure to sell, or to acquire citizenship within such periods. We cannot say, that the failure to provide for the non-resident alien kindred of citizens may not have been in pursuance of the general design to encourage the naturalization of resident aliens and to discourage the ownership of land by non-resident aliens. *Non constat* that it was not the intention of the legislature to induce citizens to devise their lands to their resident kindred, or, in case of intestacy, to transmit them to heirs living in this country.

We are of the opinion that the exception in section 1 should not be so construed as to embrace others than the class of persons therein specifically designated. (*Luhrs* v. *Eimer*, 80 N. Y. 171).

*Fourth,* it is claimed that the appellants in this case took such an interest in the lands in controversy as they can hold until the State interferes with them; and that the interest so

taken by them must be regarded as valid, until it is assailed in a direct proceeding instituted by the State. We are unable to yield our assent to this proposition.

At common law, though aliens could not take by operation of law, they could take by the acts of parties. Not taking by descent, they yet could take by grant or devise until "office found;" that is to say, an alien could hold lands conveyed or devised to him, until it was ascertained by inquiry, or inquest of office, whether or not such lands belonged to the sovereign by reason of the alienage of the holder. (*Hauenstein* v. *Lynham, supra; Cross* v. *De Valle*, 1 Wallace, 13; 3 Black. Com. 258; 1 Wash. on Real Prop.,—5th ed.,— page 79; 1 Am. & Eng. En. Law, 458–460). Hence it has come to be generally held, that, in the absence of express statutory provisions to the contrary, an alien's title to land purchased by him, or devised to him, is valid against everybody but the State, and can be divested only by "office found," or by some other act, or proceeding taken by the State for the purpose of acquiring possession. (1 Devlin on Deeds, sec. 127; *Jackson* v. *Adams*, 7 Wend. 368; *Goodrich* v. *Russell*, 42 N. Y. 177; *Heeney* v. *Trustees, etc., supra; Ettenheimer* v. *Heffernan, supra; Airhart* v. *Massieu*, 98 U. S. 491). So, it has been decided that, where lands are conveyed to a corporation forbidden by its charter to hold real estate, the title of the corporation cannot be collaterally attacked, but can only be questioned in a direct proceeding by the State. In many of the cases, however, where it has been thus decided, it appears that the corporation was permitted to hold land to a certain extent, or for certain purposes, as for instance for the purposes of its business, or that it was forbidden to "*purchase and hold*," and not forbidden to either *purchase or hold*. (*Barnes* v. *Suddard*, 117 Ill. 237; *Hamsher* v. *Hamsher*, 132 Ill. 273; *Leazure* v. *Hillegas*, 7 Serg. & Rawle, 313; *Runyan* v. *Coster*, 14 Pet. 122; *Hickory Farm Oil Co.* v. *Buffalo, N. Y. & P. R. R. Co.*, 32 Fed. Rep. 22). In *Bone* v. *President, etc.*, 5 Atl. Rep. 751, the

opinion fails to state the facts of the case, but it would appear from the syllabus and notes, that the corporation was entitled to hold land to a certain extent. In *Carlow* v. *Aultman*, 28 Neb. 672, where a non-resident corporation had bought property at a judicial sale in order to protect its lien under a judgment in its favor, it is not stated what the provisions of the corporate charter were ; but the language of the Nebraska Statute there quoted is different from the language of the Act of 1887 now under consideration.

Here, the non-resident alien is not merely forbidden to " acquire or own, hold or possess," but it is expressly declared that he " *shall not be capable* of acquiring title to or taking or holding," etc. This language cannot be construed as permitting the non-resident alien to hold a defeasible title subject to be divested only by forfeiture in favor of the State. The Act specifies what aliens may hold defeasible titles, such as the heirs of aliens who had theretofore acquired lands, and resident aliens declaring their intentions to become citizens, and creditor aliens seeking to enforce liens or judgments. The legislature having thus conferred the right to take and hold a defeasible title upon certain specified classes of aliens, must be presumed to have intended to withhold such right from the aliens, who are not embraced in those classes and who are declared to be incapable of taking or holding.

Whether or not the Act of the legislature, approved June 19, 1891, in force July 1, 1891, amending section 3 of the Act of 1887 by adding a second proviso thereto, had the effect of so changing section 1 of the Act of 1887 as to confer upon non-resident aliens the right to take a defeasible title in lands conveyed to them by deed, is a question which we are not called upon to decide in this case, as the appellants here claim to take by descent, and not by deed.

As, under the Act of 1887, the lands of a deceased intestate in this State cannot descend to his non-resident alien kindred, they will escheat to the State or county if he leaves no resident

5—144 ILL.

kindred capable of inheriting. The common law of England, so far as the same is applicable and of a general nature, and all statutes or acts of the British parliament made in aid of, and to supply the defects of the common law, prior to the fourth year of James the First, are in force in this State, except so far as they are changed or repealed by legislative authority. (Rev. Stat., chap. 28, sec. 1). If, therefore, the Act of 1887 had done nothing more than simply repeal the Act of 1851, the common law, which forbids an alien to take or hold real estate by descent, would have been in force in this State. It follows, that the Act of 1887, in enacting that "a non-resident alien * * * shall not be capable of acquiring title to or taking or holding any lands or real estate in this State by descent," is merely declaratory of the common law. By that law, "if a man leaves no other relations but aliens, his land shall escheat to the lord." (2 Blackstone 249). In such case, the land escheats to the State without office found; (*Crane* v. *Reeder, supra*), that is to say, a proceeding in the nature of office found is not necessary to vest in the sovereignty the title to lands escheating for want of heirs. But a proceeding may be required, not to give title, but "for information of title already passed." (Idem). Such a proceeding is the Illinois statute in regard to escheats, the first section of which declares, among other things, that the estates of persons dying seized of real estate without any devise, or heirs capable of inheriting the same, shall escheat. (Rev. Stat., chap. 49, sec. 1). We have held that titles by escheat must be established in accordance with the provisions of this statute. (*Wallahan* v. *Ingersoll*, 117 Ill. 123).

Accordingly, if Alexander Wunderle had died leaving no other kindred than non-resident aliens, or, in other words, leaving no heirs capable of inheriting, a proceeding under the escheat law might be necessary to establish the right of the State or county to take possession of the property in question. But it was also a principle of the common law, that, where

there was a failure of inheritable blood by reason of alienage, the lands did not escheat, but went to the next heir, or the next of kin capable of inheriting. (*Jackson* v. *Green*, 7 Wend. 335; *Orr* v. *Hodgson*, 4 Wheat. 453; *Jackson* v. *Jackson*, 7 Johns. 214; *Luhrs* v. *Eimer*, 80 N. Y. 171; *Crane* v. *Reeder, supra*). The rule is thus stated by Chancellor Kent: " If a citizen dies, and his next heir be an alien who cannot take, the alien cannot interrupt the descent to others, and the inheritance descends to the next of kin who is competent to take, in like manner as if no such alien had ever existed." (2 Kent's Com. 56).

Inasmuch, therefore, as the appellants cannot inherit from their deceased brother by reason of their alienage, the interest in the land, which would otherwise have gone to them, descends to the next of kin, competent to take under the statutes of Illinois. We are of the opinion that, under the facts of this case as presented by the record, the appellee must be regarded as such next of kin. Our statute of descents provides, that " if any intestate leaves a widow or surviving husband and no kindred, his or her estate shall descend to such widow or surviving husband." (Rev. Stat., chap. 39, sec. 1, clause 6). The kindred here referred to are evidently such kindred as are capable of inheriting. It not appearing that the deceased had any other kindred than his non-resident alien brother and sister, his widow is entitled to take the whole of the land in controversy.

Our conclusion, upon the whole case, is that the Act of 1887 is a valid law in the respects herein indicated, except as to those aliens, who are relieved from the effect of its operation by existing treaties between the United States and the countries of which such aliens are citizens or subjects.

The decree of the Circuit Court is accordingly affirmed.

*Decree affirmed.*