*On the 8th day of* February, *in this term,* JOSEPH C. YATES,
*Esquire, Counsellor at Law, was appointed one of the Judges
of this Court, in the place of Mr. Justice* TOMPKINS, *re-
signed; and on* Thursday, *the 11th day of* February, *he ap-
peared and took his seat on the Bench.*

———

## The People *against* Cutting.

**THIS** was a case of *escheat*, and came before the
court on a case made and agreed upon by the counsel for
both parties. The following are the material facts in the
case:

On the 16th of June, 1798, a *writ of escheat* issued
out of the court of chancery, in the usual form, and an
*inquisition* was thereupon taken by the sheriff of the county
of *Orange*, on the 25th of *June*, 1798, which stated, that

On a traverse
of an inquest
of office found
in behalf of the
people, in a
case of *escheat*,
the traverser is
considered as a
defendant, and
but a bare pos-

if he shows that the people have no title, though he prove nothing
in himself, he will be entitled to judgment.

Vol. III.                    A

ALBANY,
Feb. 1808.

The People
v.
Cutting.

*John Gatehouse*, at the time of his death, was seised in fee of a certain parcel of land in the county of *Orange*, granted by letters-patent, on the 22d *January*, 1719, to *Edward Gatehouse*. That *John Gatehouse* died, on or about the 30th *January*, 1770, without making a will, and without leaving any heir capable of inheriting the said land.

To this inquisition the defendant interposed a plea of traverse, in *December*, 1798, stating that *John Gatehouse* died, leaving *William Gatehouse* his son and heir, born at *Leominster*, in *Great-Britain*, on the 28th *May*, 1725, to whom the said lands descended, and from whom the said lands, by divers descents and mesne conveyances, came to the defendant, who entered, and was thereof seised in fee, at the time of finding the said inquisition.

To this plea, the attorney-general replied, that the said *John Gatehouse* did not leave any heir to inherit, &c. and that the said *William Cutting* was not seised in fee of the said lands at the time, &c. and therefore he prayed that a writ of seizure might issue, &c.

Issue being joined thereupon, the defendant proved a transcript of the registry of the consistory court of the diocese of *Hereford*, in *England*, so far as related to the marriage of *John Gittoes* with *Elizabeth Bennet*, and that the same was a true transcript, and according to custom, of the register of the parish of *Whitborne*, and by which it appeared that *John Gittoes* (the son of *William Gittoes*) was baptized the 18th *December*, 1688 ; that a daughter of *John* and *Elizabeth Gittoes* was baptized in *June*, 1714, and *John* their son was baptized in 1716, (and died in *June*, 1729) and *Richard* their son, in 1719, (who died without issue before his father) and *William* their son, the 26th of *May*, 1725, and *Edmund* their son, in *October*, 1729 ; that *John Gatehouse* died *January* 30, 1770. It was further proved by the defendant, by depositions taken by consent, and from the transcript of similar registers, that *Edward Gittoes*, a son of *John* and *Elizabeth*

*Gittoes*, died without will or issue, and seised of lands in *America*, and that the father died in *January*, 1770, leaving *William Gittoes* his son and heir.

It was admitted that the patentee, his ancestors and descendants, have been known as well by the surname of *Gatehouse*, as *Gittoes*. The defendant then produced original *agreements* between him and the several persons therein named, tenants in possession of the premises, by which they agreed to pay rent to the defendant for several parcels of land, part of the premises in question.

The defendant further proved, that several of the tenants on the said patent paid rent to *Leonard M. Cutting*, that the defendant became entitled to his interest, and that the above tenants, in *February*, 1794, by writing and by parol, acknowledged themselves the tenants of the defendant.

This cause was argued at the last *August* term, by *Woodworth*, attorney-general, for the people, and *Van Vechten* for the defendant.

*The Attorney-General.* The *traverser*, in this case, is bound to prove two things; 1. That *John Gatehouse* died leaving an heir, and, 2. That by descent or mesne conveyance from the heir, the title has vested in him. It is admitted by the case, that the patentee died leaving *William Gatehouse* his son and heir; but the defendant has wholly failed in proving any title in himself. A mere stranger cannot interpose a traverse against the people; nor is a bare possessory right sufficient for that purpose. In *traverses* given by statute, which have taken place of the ancient mode of proceeding in *England*, by petition of right, the party traversing is considered as the plaintiff; and must, therefore, make out his own title, as well as impeach that of his sovereign,* on which he may have a judgment *quod manus regis amoveantur*. In the case of *The Queen* v. *Mason*,† it was decided, that the party who sues a *monstrans de droit*, is a plaintiff, and may be *nonsuit*, and that he cannot take advantage of a want of title in

* 3 *Black. Com.* 260. *Buller's N. P.* 215. 10 *Viner, Escheat,* (L. 24.)
† 2 *Salk.* 447.

The People
v.
Cutting.

* *Dyer*, 238.

† 3 *Black. Com.*
260.

‡ *Nisi Prius*,
215.

§ *Laws of N.
Y.* vol. 1. 316.

¶ 9 *Co.* 95, 96.

the crown, or of the title of a stranger, so that if he fails in making out a title in himself, a judgment is given *quod nil capiat per breve*. Both *Blackstone* and *Buller* are decidedly of opinion, that the traverser must be considered as a plaintiff. And if the traverser allege an insufficient title, the attorney-general may demur.*

From the case, it is evident, that the present traverser thought it requisite to show a title in himself, for he has alleged it in his plea ; and if it be necessary for him to allege a title, it is equally necessary that such title should be proved. In *England*, when an office is found for the king, he is thereby put in possession without the trouble of a formal entry.† If the people, then, after an office found, are to be considered in possession without an entry, it becomes essential for the party traversing to show a *title*, and not a mere possessory right. All that the present party has proved, is a possession for a few years.

*Van Vechten*, contra. The only point in controversy is, whether the traverser is bound to prove a title in himself. The claim of the people rests on the ground that the patentee died without making any devise or disposition of his property, and without heirs ; and it will be sufficient for the traverser to disprove the facts on which the right of the people is founded ; for if he shows that the patentee died seised, and devised his estate, or left an heir, then the claim on the part of the people must wholly fail. *Buller*‡ mentions two kinds of offices, one for *intituling*, and the other for *instruction* or information. In the former the crown is in possession by virtue of the inquisition. This was by the common law ; and the office which gave a seisin or possession to the king, could not be traversed; but only where it entitled him to an action, and it became necessary to bring a *scire facias*. The present cannot be considered as an inquisition that vests the possession in the people, for the statute§ of this state requires a *writ of seisin* to be issued, in case judgment should be given for the people. From Sir *George Reynell's* case,¶ it appears, that there have been various

and contradictory authorities and opinions on this subject. It is true, *Blackstone* and *Buller* lay it down generally, that the traverser of an inquisition is to be considered as a party plaintiff; but the case of *Regina* v. *Mason* seems loosely and inaccurately reported, and the editor of *Bacon**  regards it as an anomalous proceeding. In the case of the *Bankers*,† Lord *Somers* states the true distinction, that where the subject comes to recover any thing from the king, he is to sue by *petition*, and appears as plaintiff, but when upon an office found, the subject comes to traverse the king's title, or to show his *own right*, he is in the nature of a defendant; and he says expressly, that in the proceeding by *monstrans de droit*, where the subject interpleads with the king, he is to be considered as a defendant. The traverser, in fact, pleads and acts as a defendant, and the attorney-general as plaintiff. In the case of *Rex* v. *Roberts*,‡ it was expressly decided, that the traverser of an inquisition, in a case of lunacy, was to be considered as a defendant; and it was observed, that it would be absurd to construe the liberty of traversing the inquisition to give a power of delaying the crown, which would be the case, if the party were considered as having the common right of a plaintiff. The cases cited by the attorney-general were those in which the crown was in possession by the inquisition, and where the judgment is *quod manus regis amoveantur ;* but in the present case the judgment must be, that the defendant be no longer disturbed or molested. By the *English* statutes, the *escheator* is supposed to have seised the lands into the hands of the king, and the party is allowed to come in and traverse the inquisition, so as to remove the hands of the king, who is deemed to be in possession. By our statute a writ of seisin is expressly required, in case judgment is given for the people. If the present defendant should clearly prove that there had been no *escheat* in the present case, yet, according to the doctrine contended for by the attorney-general, judgment must be given against him, and the tenants be turned out of possession by a writ of seisin.

ALBANY,
Feb. 1808.

The People
v.
Cutting.

* 5 *Bac. Ab.* by *Gwill.* 574.

† 11 *State Trials*, 154.

‡ *Strange,*1208. *Vaugh.* 62. *Coke's Ent.* 404. *Tremain,* 628. 652.

This, however, is a wrong which our statute was meant to prevent or remedy, and to put the case precisely on the same ground as an action of ejectment, where the plaintiff must prove a title, and if the defendant can show that the plaintiff has no title, judgment will be given for the defendant. The traverser, it is true, has alleged in his plea that by sundry devises and mesne conveyances, he has become entitled to the land. This was proper, in order to show that he did not come as a mere stranger to traverse the inquisition; but it is not necessary that he should prove a title in himself. It is enough, that he is a person aggrieved, and if he can show that the people have no right or title, he ought no longer to be molested by the prosecution of a groundless claim.

KENT, Ch. J. now delivered the opinion of the court. The inquisition taken in this case, in pursuance of the *act concerning escheats,* (*Laws N. Y.* vol. 1. 310.) states, that *John Gatehouse* died seised in fee of the premises, without making a will, and without leaving any heir capable of inheriting the same. This allegation is denied in the plea of traverse put in by the defendant; and, from the facts stated in the case, it is sufficiently proved, that *Gatehouse* did leave a lawful heir, capable of inheriting the land, to wit, his son *William.* But the defendant has not shown a title derived from the heir, but merely that he was in possession of the premises by his tenants, in the year 1794. He has destroyed the title of the state, as founded upon the supposed *escheat,* but he has shown no title in himself beyond his actual possession. The question then arising upon the case is, whether it be sufficient for the defendant to impeach the title set up by the state, without setting forth his own. Many of the authorities say, that in traversing an inquisition in favour of the king, in pursuance of the statutes of 36 *Edw.* III. c. 13. and 2 & 3 *Edw.* VI. c. 8. the party traversing is considered in the character of a plaintiff, and is bound to make out affirmatively a good title in himself. (*The Queen* v. *Mason,* 2 *Salk.* 447. 3 *Black. Com.* 260. *Buller's N. P.*

215. *Vaugh.* 64.) These cases are, however, met and opposed by opinions which lay down a contrary doctrine, and one which appears to me to be more rational, and more agreeable to the forms and course of pleading. In the argument of Lord Keeper *Somers*, in the case of the *Bankers*, in the exchequer, (11 *St. Tri.* 154.) he observed, that where an office is found in favour of the king, under the statute of *Edw.* III. the subject might come in and interplead, either by denying the title found for the king, or by showing his own right, and that in such case he was to be considered in the light of a defendant. The same observation is made by the last editor* of *Bacon.* (vol. 5. 574.) The party appears upon the record in the character of a defendant. He shows his right in the form of a plea, and if he may be nonsuited, as the case in *Salkeld* adjudged, the proceeding is quite anomalous. The case of *The King* v. *Roberts*, (*Str.* 1208.) is one of the latest that we have upon this question. The court of king's bench there resolved, that the traverser of an inquisition, finding him a lunatic, was to be considered as a defendant opposing the title of the crown, without setting up any title in himself. The point cannot, therefore, be considered as altogether settled in the *English* law, although it must be admitted that the weight of the authorities is on the side of the prerogative. But our statute contains provisions different from those in the *English* statutes, and I think it will authorise us to consider the party traversing as sustaining the character, and entitled to the privileges of a defendant, and that it will therefore be sufficient for him to destroy the title set up by the state. The statute is altogether silent as to the judgment to be rendered in favour of the party; but if the judgment be in favour of the people, the sheriff is required by writ to seize the lands into his own hands. The like writ is also to issue if no traverse be taken, and when the state shall have disposed of the lands, the sheriff is to deliver possession to the purchaser. The office or inquisition mentioned in

ALBANY,
Feb. 1808.

The People
v.
Cutting.

* *Gwillim.*

the act seems, therefore, to be one which does not ope-
rate like the inquest of office mentioned in the statute
of *Edw*. III. of " *a seizure into the king's hands*." The
writ of seizure necessarily implies that possession had not
previously vested in the state. The *English* statutes con-
tain no such provision, but they consider the inquisition
as of itself vesting the seisin in the *escheator*, and such no
doubt is the ordinary operation of an inquest of office in
behalf of the state. (*The People* v. *Brown*, *November*

* 1 *Caines*, 416. *Term*, 1803.*) We are, therefore, of opinion, that un-
der our statute we may consider the party traversing as a
defendant in possession, and consequently entitled to
protect himself by showing the inquisition to be untrue.

SPENCER, J. having been concerned, when attorney-
general, as counsel for the people, declined giving any
opinion.

Judgment for the defendant.