ELIZABETH WALLAHAN *et al.*

*v.*

EVA INGERSOLL.

*Filed at Ottawa May 15, 1886.*

1. TAX TITLE—*notice by the purchaser—its requisites.* Where the affidavit of the service of notice of a tax purchase fails to state the particular facts relied on as showing a compliance with sections 216 and 217 of the Revenue act, as amended by the act of 1879, the sale being in 1881, for the taxes of 1880, it will not authorize the making of a deed by the county clerk, and if made, it will be void.

2. ESCHEATS—*of the proceedings to establish an escheat.* Under the law of 1845, where the owner of real estate died intestate, without heirs capable of inheriting it, the title thereof devolved, by operation of law, upon the State. But to make the title available to the State, it had to be first established by a judicial proceeding in the nature of an inquest of office; and the record of it is the only competent evidence by which a title by escheat can be established.

3. Although general power is conferred by statute upon the court to adjudicate in respect to escheats, yet it must be put into motion by the filing of an information conforming substantially to the requirements of the act governing such proceedings, otherwise jurisdiction as to the subject matter will not attach.

4. The first step under the act of 1845 to establish an escheat, was the filing by the Attorney General or circuit attorney of an information in the circuit court of the county in which the land was situated, giving its description, the name of the person last lawfully seized, the names of the *terre tenants*, and persons claiming such estate, if known, and the facts and circumstances in consequence of which such estate is claimed to have escheated, and alleging that by reason thereof the State hath right, by law, to such estate.

5. SAME—*of the process—when it may properly issue—and its requisites.* On the filing of such information it was made the duty of the court to award and issue a *scire facias* against such person or persons, bodies politic or corporate, as shall be alleged in the information to hold, possess or claim such estate, requiring them to appear and show cause why such estate should not be vested in the State.

6. Where the information fails to give the names of the *terre tenants*, no *scire facias* can properly issue against them to make them parties; and the issue and service of such process on part, only, of such tenants not named in the information, will fail to give the court jurisdiction over the person of any one claiming adversely, and its judgment will be void.

7. A *scire facias* issued in 1849 upon an information to adjudge a tract of land as escheated to the State, requiring the *terre tenants* and claimants to appear and show cause why the land should not be vested in the State, is void if it does not run in the name of the People of the State, and being void, its service is a nullity.

8. SAME—*of the notice to others interested.* It is also made the duty of the court to make an order setting forth briefly the contents of the information, and requiring all persons interested in the estate to appear and show cause, at the next term, why the land should not be vested in the State. This order was required to be published for six weeks successively, in some newspaper, the last insertion to be at least two weeks before the term to which they were required to appear.

9. The court can only acquire jurisdiction, under the law of 1845, over persons interested, other than those named as tenants and claimants, by making an order setting forth the contents of the information, and requiring all persons interested in the estate to appear, and causing such order to be published six weeks successively, the last insertion to be at least two weeks before the next term. When it appears that the last insertion was less than two weeks, the court will acquire no jurisdiction.

10. SAME—*effect of finding of due service.* And if the record shows a certificate of the publication of notice not such as the law required to give jurisdiction, a recital in the orders and judgment that notice was properly given, will not avail to sustain the judgment.

APPEAL from the Circuit Court of Woodford county; the Hon. DAVID McCULLOCH, Judge, presiding.

Messrs. HOPKINS & HAMMOND, for the appellants.

Mr. C. H. CHITTY, for the appellee.

Mr. CHIEF JUSTICE MULKEY delivered the opinion of the Court:

On the 4th of November, 1884, Eva Ingersoll commenced an action of ejectment in the Woodford circuit court, against Elizabeth Wallahan and others, for the recovery of the east half of the north-east quarter of section 15, and the north-east quarter of the south-east quarter of section 29, township 27 north, range 2 west. The cause was subsequently tried upon the merits, resulting in a judgment for the plaintiff, to reverse which this appeal is brought.

That the plaintiff established a *prima facie* right of recovery in the first instance, is not seriously controverted. The questions, therefore, to be determined, relate to the sufficiency of the defence to overcome the *prima facie* case made by the plaintiff.

The defendant sought to establish, on the trial, an outstanding title in the State, by escheat, to the whole of the property, and a valid tax title, as to the eighty-acre tract, in Mrs. Wallahan, founded upon a tax sale in 1881, for the taxes of 1880 and prior years. Not stopping to remark upon the inconsistency of these defences, the latter may be disposed of in a few words. The affidavit upon which the tax deed was issued is wholly insufficient. It does not state the particular facts relied on as showing a compliance with the requirements of the 216th and 217th sections of the Revenue act, as amended by the act of 1879. Indeed, there is no attempt to do so. Such being the case, there was no authority in the county clerk to issue the tax deed, and it is consequently void. *Price* v. *England,* 109 Ill. 394.

Having reached this conclusion, it is unnecessary to notice the other objections urged against the tax proceeding.

The evidence relied on to establish title in the State is anything but satisfactory. It consists mainly of certain papers found in the office of the clerk of the circuit court of Woodford county, and though none of them, except perhaps one, bear the file marks of the clerk, yet, all the circumstances considered, we think it sufficiently appears that they constitute the files of an escheat proceeding, commenced in the name of the People in 1849, for the purpose of establishing title in the State, by escheat, to the land in controversy.

Before calling attention to the statutory provisions on the subject, with a view of determining whether they were complied with in that particular case, it is, perhaps, proper to call attention to the general common law principles relating to the subject of escheats. When the owner of real property

dies intestate, without heirs capable of inheriting it, the title thereof devolves, by operation of law, upon the State. Yet when thus acquired, the State can not make its title available without first establishing it in the manner prescribed by law. This.is done by the institution of a judicial proceeding in the proper court, in the name of the People, for the purpose of proving and establishing, by a judicial determination, title in the State. The facts essential to the existence of the State's title are specifically set forth in the statute, and must be clearly proven on the hearing.. The proceeding is in the nature of an inquest of office, and the record of it is the only competent evidence by which a title by escheat can be established. *Dow* v. *O'Hanlon*, 1 N. J. 582; *Crane* v. *Reeder*, 21 Mich. 8; *Commonwealth* v. *Hite*, 6 Leigh, 588; *The People* v. *Cutting*, 3 Johns. 1.

The proceeding, the record of which is relied on as showing title in this case, was had under the act of 1845, entitled "Escheats," (Rev. Stat. 1845, p. 225,) which is in most respects like the present act, the material difference being that estates now escheat to the county in which the property, or the greater portion of it, is situated, instead of to the State. By the second section of the act of 1845 it is made the duty of the Attorney General, or the circuit attorney of the proper county, when he is informed, or has reason to believe, that any real estate within his district has escheated to the State, to file an information in the circuit court of the county in which such estate is situated, "setting forth a description of the estate, the name of the person last lawfully seized, the names of the *terre tenants* and persons claiming such estate, if known, and the facts and circumstances in consequence of which such estate is claimed to have escheated, and alleging that by reason thereof the State of Illinois hath right, by law, to such estate." Upon the filing of such information it is made the duty of the court "to award and issue a *scire facias* against such person or persons, bodies politic or corporate, *as shall*

*be alleged in such information* to hold, possess or claim such estate, requiring them to appear and show cause why such estate should not be vested in the State," etc. It is also made the duty of the court to make an order setting forth briefly the contents of the information, and requiring all persons interested in the estate to appear and show cause, if any they have, at the next term of the court, why the same should not be vested in the State. This order is required to be published for six weeks successively, in some newspaper in or nearest to the county in which such proceeding is had, the last insertion to be at least two weeks before the commencement of the term at which the parties are required to appear.

Such are the plain and express provisions of the statute with respect to the preliminary steps to be taken before there can be any valid adjudication in an escheat proceeding. In this, as in all other judicial proceedings, it is essential to the validity of the adjudication and final decision therein, that the court rendering it shall have jurisdiction of the subject matter of the suit, as well as of the persons to be affected by it. General power over the subject matter, in cases of this kind, is of course given by the statute. Nevertheless, the court must be put in motion by the filing of an information which conforms substantially to the requirements of the acts governing the proceeding, otherwise jurisdiction as to the subject matter will not attach.

Although quite a number of exceptions are taken to the information, we are of opinion that with one exception they are not well founded. The only substantial objection to it is, that it fails to name as defendants the occupants or *terre tenants* of the land, although it affirmatively appears from other parts of the record that two persons, namely, one Painter, and Abram Dressler, were in possession of the land at the time the information was filed. By a so-called *scire facias*, some one not named,—presumably the officer to whom it might

happen to be delivered,—is commanded to summon these parties, and there is a return by the sheriff of the county showing service on Painter, but no return as to Dressler. The importance of the information setting forth the names of all persons in possession or claiming an interest in the premises, is shown by the fact that the *scire facias* is required to issue only against such "as shall be alleged in such information to hold, possess or claim such estate." The issuing of the *scire facias* against or service of it upon any others, would manifestly be a superfluous, idle act, and available for no purpose whatever. It would be just like any other case of serving one with process who is not made a party to the suit. Had no one been in possession or claimed an interest in the land, the information should simply have stated that fact. In that case the issuing of a *scire facias* would not have been proper, for the reason there would have been no one to issue it against.

For the reasons already stated, and others yet to be mentioned, we are of opinion the court failed to obtain jurisdiction over the persons of any one claiming adversely to the State. The persons to be affected by the adjudication were of two classes: First, those in possession of the premises, and such as were known to claim an interest therein; and second, all other persons not embraced in the first class. As to the first class, the statute requires, as we have just seen, their names to be set forth in the information, and a *scire facias* is to be issued against and personally served upon them. As to the second class, or persons generally, jurisdiction can only be obtained by means of constructive service, as provided in the second section of the act, which, it will be remembered, is obtained by the court making an order setting forth the contents of the information, and requiring all persons interested in the estate to appear, etc., and causing such order to be published six weeks successively in the proper newspaper, the last insertion to be at least two weeks before the com-

mencement of the term at which the parties are required to appear. We are clearly of opinion the service is fatally defective ·as to both classes provided for in the statute.

As to the so-called personal service, there are several fatal objections to that. First, there was no authority to issue the writ at all, because no one is "alleged in the information to hold, possess or claim the estate." Second, assuming the writ might properly have issued against the occupants of the land in the absence of such a charge in the information, then the service was not good, because the return shows there was service upon but one of the occupants and no return as to the other. As well might a court proceed in a partition case where there is service on a part of the defendants only, with the hope of making a valid partition, as for it to have proceeded in that case, where only a part of the *terre tenants* had been personally served. Third, outside of all these objections, the *scire facias* was and is absolütely void upon its face, because it does not run in the name of the People. There are other minor objections to it, which we will not stop to notice.

The constructive service relied on is equally bad. Waiving all objections to the form of the order, the printer's certificate which is offered in evidence in this cause shows upon its face that the last insertion of the order in the newspaper was less than two weeks before the commencement of the term at which the parties were required to appear. This objection is fatal to the notice, notwithstanding the recital in the record to the effect that notice was properly given.

No question of innocent purchaser for value is involved in this case, hence those decisions sustaining titles in the interest of innocent purchasers upon such recitals, have no application. The question here is, whether one having no title can avail himself of such a recital to show an outstanding title in a stranger, for the purpose of defeating a plaintiff's action who otherwise appears to have a good title, when, as is the case here, it is clear from the proof of notice itself, which is

9—117 ILL.

a part of the same record, that the recital is untrue. In such case we have no hesitancy in holding the recital is not available for such a purpose.

As we regard the jurisdiction of the court fatally defective in the escheat proceeding on the grounds stated, it follows the judgment and orders in the case were without authority of law, and consequently afford no defence to the present action. Having reached this conclusion, it is not necessary to discuss, the other objections taken to the proceedings in that case.

The judgment will be affirmed.

*Judgment affirmed.*