## JAMES BEAVAN

### *v.*

## SARAH WENT *et al.*

*Filed at Ottawa January 15, 1895—Rehearing denied June 15, 1895.*

1. DESCENT—*common law rule that citizen cannot inherit through alien, not repugnant to our institutions.* The common law rule that one citizen cannot inherit from another where kinship must be traced through a non-resident alien, cannot be rejected as repugnant to our institutions, under a statutory adoption of the common law, so far as applicable.*

2. SAME—*collateral "next of kin" do not take immediately.* A statutory provision that an estate shall descend in equal parts to next of kin does not make the descent to collateral kindred immediate, so as to avoid the effect of alienage of ancestors through whom kinship is traced.

3. COMMON LAW—*repeal of statute abrogating common law—effect.* The repeal of a statute which abrogated a common law rule revives that rule.

APPEAL from the Superior Court of Cook county; the Hon. W. G. EWING, Judge, presiding.

PRENTISS, MONTGOMERY & HALL, for appellant:

If the will was intended to convey a life estate to the widow, she cannot take such life estate and at the same time renounce the will and take one-half of the real and personal estate under the statute. She lost all her interest under the will when she renounced it and elected to take under the statute. *Brown's Exrs.* v. *Pitney*, 39 Ill. 468; *Lessley* v. *Lessley*, 44 id. 527; *Cowdrey* v. *Hitchcock*, 103 id. 262; *McMurphy* v. *Boyles*, 49 id. 110.

An election, once made, is final and irrevocable, when it is not shown that the party acting or acquiescing was not cognizant of his rights. 3 Com. Dig. 614, title "Election;" 3 Bacon's Abr. title "Election," 314; *Davis* v. *Davis*, 11 Ohio, 386; *Wilbanks* v. *Wilbanks*, 18 Ill. 17; *Spofford* v. *Manning*, 6 Paige, 383; *Cowdrey* v. *Hitchcock*, *supra*.

---

*See a valuable note on the "Adoption of the common law in the United States," 22 L. R. A. 501,

The will of William Went created a naked trust, and the title to the real estate vested immediately in the *cestuis que trust*, the widow acquiring no title under it. Starr & Curtis' Stat. chap. 30, par. 3; *Kirkland* v. *Cox*, 94 Ill. 400; *Witham* v. *Brooner*, 63 id. 344; 3 Redfield on Wills, 531, *et seq.*

The "sisters and their descendants" are non-resident aliens, and as such are incapable of taking and holding real estate in this State because of our statute; therefore the estate descends as intestate estate to the heir-at-law or next of kin capable of inheriting. Hurd's Stat. 1893, chap. 6; 4 Kent's Com. 541; 1 Jarman on Wills, 311, and cases cited; 2 Redfield on Wills, 175, 176; *Wunderle* v. *Wunderle*, 144 Ill. 40; *Mills* v. *Newberry*, 112 id. 123; *Schultz* v. *Schultz*, 144 id. 290.

Although the "sisters and their descendants" are the nearest blood relatives to William Went, deceased, the law of 1887 makes them incapable of inheriting, and causes the estate to descend immediately to the "next of kin capable of inheriting," which is appellant. Hurd's Stat. 1893, chap. 39, sec. 1; chap. 49, sec. 1; chap. 6.

While the right to inherit comes to him mediately through some person who was an alien, the statute casts the estate directly upon him. Bingham on Descents, 498.

William Went is the ancestor of the estate that is to descend, and not the source from whence Beavan derived his life, or, in the language of the feudal law, his blood. Bingham on Descents, 495; *McCarthy* v. *Marsh*, 5 N.Y. 263.

That appellant is not allowed, by the laws of this State, to trace his inheritable blood through alien ancestors, for the purpose of taking title to the real estate mentioned in the bill by descent, we submit is not the law of this State and never has been, and in support of our contention we refer to the following authorities : Starr & Curtis Stat. chap. 39, sec. 1; Reeve on Descents, 17, 18, 15, 70, 33, 147 ; *Rogers* v. *Weller*, 5 Biss. 169 ; *Appeal of Campbell*, 64 Conn. 290 ; 2 Blackstone's Com. 220, 224 ;

24 Am. & Eng. Ency. of Law, 365, *et seq.* note 7, and cases cited; *Bates* v. *Brown,* 5 Wall. 710.

CRATTY BROS., JARVIS & CLEVELAND, for appellees Jane Holland and Frances Barnes ; and FLOWER, SMITH & MUSGRAVE, for appellees Susanna Went, Charlotte E. Baylis, Susanna Baylis and Elizabeth Yarnold :

Appellant claims by descent from William Went, deceased.  He cannot inherit from said Went because he does not take immediately from Went, but mediately through several alien ancestors, who interrupt the descent of the estate to him.    2 Kent's Com. (13th ed.) *54, and cases cited ; 1 Cooley's Black. book 2, *226, *249 ; Tiedeman on Real Prop. sec. 675 ; *Levy* v. *McCartee,* 6 Pet. 108 ; *Collingwood* v. *Pace,* 1 Vent. 413 ; Rev. Stat. chap. 28; *McGregor* v. *Comstock,* 3 N. Y. 480 ; *Seeley* v. *Peters,* 5 Gilm. 149 ; *Boyer* v. *Sweet,* 3 Scam. 120 ; *Gerber* v. *Grabel,* 16 Ill. 217; *Guest* v. *Reynolds,* 68 id. 470 ; *Penny* v. *Little,* 3 Scam. 301; *Middleton* v. *Pritchard,* id. 510 ; *Stewart* v. *People,* id. 395 ; *Wunderle* v. *Wunderle,* 144 Ill. 58 ; *McLean* v. *Swanton,* 13 N. Y. 535 ; *People* v. *Irvin,* 21 Wend. 127; *McCarthy* v. *Marsh,* 5 N. Y. 263 ; *People* v. *Conklin,* 2 Hill, 67; *Jackson* v. *Green,* 7 Wend. 333 ; *Jackson* v. *Fitz Simmons,* 10 id. 11; *Crane* v. *Reeder,* 21 Mich. 24; Sandars' Justinian, 27; Domat's Civil Law, (by Strahan,) sec. 2502 ; *Jacksons* v. *Sanders,* 2 Leigh, 118; *Parish* v. *Ward,* 28 Barb. 331; Bingham on Descents, 492, 495, 498 ; 11 and 12 William III, chap. 6 ; 14 Am. & Eng. Ency. of Law, 703 ; 23 id. 325, note 1; *Blacklaws* v. *Milne,* 82 Ill. 505 ; 4 Kent's Com. *413 ; *Orthwein* v. *Thomas,* 127 Ill. 554; *Bales* v. *Elder,* 118 id. 436 ; 127 id. 425 ; *McCool* v. *Smith,* 1 Black, 459 ; *Hays* v. *Thomas,* Breese, 136; *Hillhouse* v. *Chester,* 3 Day, 166.                    ＼

By virtue of the amendment of 1891 to the Alien statute the devise to the sisters vested in them the entire estate, subject to the rights of the widow, except as against the State, and the conveyance by them to a citizen vests in such citizen a good title.    *Wunderle* v. *Wun-*

*derle,* 144 Ill. 65 ; Rev. Stat. "Aliens," sec. 3 ; 1 Cooley's Black. book 2, *240, 309 ; 2 Kent's Com. *53, 54, 61; *Fairfax* v. *Hunter,* 7 Cranch, 603 ; 3 Washburn on Real Prop. *565 ; Anderson's Law Dic. 254, 324; *Livermore* v. *Bagley,* 3 Mass. 510 ; *Brown* v. *Fitz,* 13 N. H. 285 ; *Klein* v. *McNamara,* 54 Miss. 105 ; *Rex* v. *Fauntleroy,* 1 C. & P. 421; *Rex* v. *Lyon,* 1 Russ. & Ry. 255 ; *Insurance Co.* v. *Avery,* 60 Ind. 566 ; *People* v. *Caton,* 25 Mich. 388 ; *People* v. *Hoffman,* 97 Ill. 234; *Anderson* v. *Railroad Co.* 117 id. 26; *Gormley* v. *Uthe,* 116 id. 643 ; *Castner* v. *Walrod,* 83 id. 171; Potter's Dwarris on Statutes, 139 ; Domat's Civil Law, (by Strahan,) secs. 2420, 2421.

J. WARREN PEASE, for appellee Sarah Went :

Upon the proposition that by the common law the complainant could not take there can be no doubt whatever, for by the common law an alien could not take lands by descent nor transfer them to others. *Moore* v. *White,* 6 Johns. Ch. 365 ; *Orr* v. *Hodgson,* 4 Wheat. 453 ; 1 Washburn on Real Prop. 74; Williams on Real Prop. 58.

The law never casts a freehold upon an alien, who cannot keep it. Nor is a party permitted, by the common law, to trace his descent through his alien father or through alien relatives. *Levy* v. *McCartee,* 6 Pet. 102 ; *Jackson* v. *Green,* 7 Wend. 336 ; *Jackson* v. *Fitz Simmons,* 10 id. 9 ; *Redpath* v. *Rich,* 3 Sandf. 79 ; 2 Kent, 54; 2 Blackstone, 249.

Mr. JUSTICE BAILEY delivered the opinion of the court :

This was a bill in chancery, brought by James Beavan, against Sarah Went, Susanna Went, Jane Holland, Elizabeth Yarnold, Frances Barnes, Charlotte Elizabeth Baylis, Susan Baylis, and the unknown heirs of William Went, deceased, for partition. Sarah Went and several of the other defendants appeared and filed a general demurrer to the bill, which being sustained, and the complainant electing to abide by his bill, a decree was

entered dismissing the bill for want of equity, at his costs, and he has now appealed to this court.

The bill alleges that the complainant is a resident of the State of Ohio and a naturalized citizen of the United States ; that William Went, late of Chicago, departed this life August 10, 1892, being then seized in fee of certain lands in Cook county which the bill seeks to have partitioned, and leaving a last will and testament, as follows :

"CHICAGO, *March 16, 1892.*

"*Know all men by these presents,* That I, William Went, being sound in mind and weak in body, do this day make this instrument. Born in Prestigne, Radnorshire, England, in the year A. D. 1828, on the 28th day of July, at present a citizen of the United States of America.

"I will and bequeath all real and personal property to my wife, Sarah Lewis, *nee* Went, in trust for my surviving sisters and their lawful descendants.

WILLIAM WENT."

That the foregoing will was duly attested by witnesses, and was admitted to probate by the probate court of Cook county August 15, 1892; that the testator left no issue or descendants of issue, but left him surviving Sarah Went, his widow, Susanna Went, Jane Holland, Elizabeth Yarnold and Frances Barnes, his sisters, and Charlotte Elizabeth Baylis and Susan Baylis, the daughters of his deceased sister, Charlotte Baylis, and that they and the complainant are the only next of kin and heirs-at-law of the testator; that the complainant is the son and only issue of William Beavan and Jane Beavan ; that his father was the only issue of William Beavan and Jane Beavan, the last named Jane Beavan being the only sister of William Went, the father of the testator, said William Went having no brothers ; that William Beavan and Jane Beavan, the complainant's father and mother, William Beavan and Jane Beavan, his grand-

father and grandmother, and William Went and Charlotte, his wife, the father and mother of the testator, were all deceased prior to the death of the testator. The bill admits that the complainant's father and mother, his grandfather and grandmother, (the grandmother being the sister of the testator's father, and through whom he traces his relationship to the testator,) were all non-resident aliens.

The bill further alleges that the four sisters and the two nieces of the testator above mentioned were, at the time of the testator's death, and still are, non-resident aliens, they all being citizens and residents of the kingdom of Great Britain, and were and are, under the laws of this State, incapable of acquiring title or taking or holding lands or real estate in this State, by devise, purchase or otherwise; also, that Sarah Went, the testator's widow, on the 18th day of August, 1892, filed her renunciation of her rights under the will, and on the 11th day of January, 1893, filed her election to take her share in the estate of her deceased husband as provided by law.

The bill claims that, by reason of the premises, Sarah Went and the complainant became each seized of an undivided one-half interest in the premises in question, as tenants in common, and seeks to have them partitioned accordingly.

The first, and we think the only, question presented by the appeal is, whether any interest in the real estate of William Went, the testator, has descended to and become vested in the complainant. No cross-bill having been filed by either the widow or sisters of Went, no question arises as to their rights as among themselves, unless a consideration of their rights becomes necessary to a determination of those of the complainant. Even then, if it be admitted, as the complainant contends, that the beneficiaries under the will, being non-resident aliens, were incapable of taking any interest in real estate by devise, and that the will therefore is void,

thus rendering the estate of Went intestate,—questions about which we now desire to express no opinion,—does it follow that any interest in the estate descended to the complainant?

It is, to say the least, doubtful whether, under our Statute of Descents, the complainant, so long as the deceased left a widow, became entitled to inherit any portion of his estate as next of kin. The complainant was a second cousin of the deceased, being a son of his first cousin. The only provision of the statute which, in express terms, provides for the descent of real estate to the next of kin other than children and their descendants, brothers and sisters, and surviving parents and their descendants, and the widow and surviving husband, is the fifth clause of section 1, chapter 39, of the Revised Statutes, and that provides merely that the estate shall descend in equal parts to the next of kin, "if there is no child of the intestate, or descendant of such child, and no parent, brother or sister, or descendant of such parent, brother or sister, and no widow or surviving husband." And it is difficult to see how the complainant can inherit under this clause, so long as the intestate left a widow surviving him.

Looking at the entire section, it will be seen that the first clause provides that intestate estates shall descend to the children of the intestate and their descendants. By the second clause it is provided, that where there is no child of the intestate or descendant of such child, and no widow or surviving husband, it shall descend in equal parts to the parents, brothers and sisters of the intestate, and their descendants. The third clause provides, that where there is a widow or surviving husband, and no child or children or descendants of a child or children, one-half of the real estate and all the personal estate, after the payment of debts, shall descend to the widow or surviving husband, the other half to descend as in other cases where there is no child or children or de-

scendants of a child or children. The fourth clause relates solely to personal estate, and the fifth clause, as we have already seen, provides that "if there is no child of the intestate or descendant of such child, and no parent, brother or sister or descendant of such parent, brother or sister, and no widow or surviving husband, then such estate shall descend in equal parts to the next of kin of the intestate in equal degree, (computing by the rules of the civil law,) and there shall be no representation among collaterals, except with the descendants of brothers and sisters of the intestate." The sixth clause provides that "if any intestate leaves a widow or surviving husband, and no kindred, his or her estate shall descend to such widow or surviving husband;" and the seventh clause provides that if the intestate leaves no kindred, and no widow or husband, his or her estate shall escheat to the county.

But it is claimed that the right of the complainant to inherit in this case may be made out from the third clause, which provides that the half of the estate not given by that clause to the widow or surviving husband shall descend as in other cases where there is no child or children or descendants of a child or children. But the only clause which directs the course of descent where there is no child or children or descendants of a child or children is the second, and it is there provided that in such case the estate shall descend to the parents, brothers and sisters, and their descendants, and no mention whatever is made of collaterals. The only clause which appears to give any right of inheritance to collaterals, as we have already said, is the fifth, and it is there given to them only where there is no survivor of any of the classes there named, a widow and surviving husband being of the number; and there being here a surviving widow, it is difficult to see how, under that or either of the other clauses of the section, the complainant is entitled to inherit.

But without expressing any decided opinion upon this question, we prefer to place our decision upon another ground, and that is, that the complainant must trace his kinship to the deceased through several non-resident aliens, who, if themselves living, could not have succeeded to the estate as next of kin.

If the well known rules of the common law applicable to this question are in force in this State, it is very clear that the complainant did not inherit from the intestate. The common law rule is, and always has been, that a citizen can not take by representation from an alien, because the alien has no inheritable blood through which the title can be deduced. (2 Kent's Com. 54.) An alien is not regarded as having sufficient inheritable blood to transmit the inheritance to collateral heirs who are citizens. (Tiedeman on Real Prop. sec. 675.) In England this rule was changed by the statute of 11 and 12 William III, which provided, in substance, that a natural born subject might inherit, notwithstanding the fact that his father and mother, or other ancestor through whom he derived his pedigree, were born out of the king's allegiance.

The case of *Levy's Lessees* v. *McCartee*, 6 Pet. 102, furnishes a very elaborate and learned discussion of the whole question. In that case both the intestate and the claimants were citizens of the United States, the former being a resident of the State of New York and the latter of the State of South Carolina. The claimants were grandchildren of the maternal uncle of the intestate, the uncle being an alien. The State of New York had adopted both the common and statute law of Great Britain, but had afterwards passed a statute declaring that none of the statutes of Great Britain should be considered as laws in that State. The Supreme Court of the United States, after reaching the conclusion that the statute of William III had thus been repealed, so as to restore the common law rule, prior to the death of the intestate, held that a claimant who must make his pedigree through mediate

alien ancestors could not in that State inherit collater-
ally from a citizen.   After discussing the English author-
ities, and especially the leading case of *Collingwood* v.
*Pace*, reported in 1 Ventris, 413, 1 Keeble, 671, and in vari-
ous other Reports, the court reached the conclusion that
if the pedigree must be traced through a mediate alien
ancestor the party can not take by descent, for the in-
heritable blood is stopped, and there is a flat bar to the
assertion of any title derived through the alien.   The
only exception to this rule, as settled in *Collingwood* v.
*Pace*, is, that brothers who are citizens may inherit from
each other although their father is an alien.   But this is
upon the theory that brothers inherit from each other
immediately, and not mediately, and therefore that they
are not obliged to derive their pedigree through their
alien father.   To the same effect see *Jackson* v. *Green*,
7 Wend. 333; *Jackson* v. *Fitz Simmons*, 10 id. 9; *Redpath* v.
*Rich*, 3 Sandf. 79.

The question then arises whether the rule of the com-
mon law on this subject must be deemed to be in force in
this State.   There can be no doubt that the statute by
which the common law was adopted in this State is com-
prehensive enough to include it.   By that statute the
common law of England, so far as the same is applicable
and of a general nature, and all statutes or acts of the
British parliament made in aid of or to supply the defects
of the common law prior to the fourth year of James I,
(with the exception of certain statutes not material here,)
and which are of a general nature and not local to that
kingdom, shall be considered as of full force until re-
pealed by legislative authority.   Rev. Stat. chap. 28,
sec. 1.

It can not be justly claimed that there is anything in
the rule under consideration so repugnant to the nature
of our institutions, or so unsuitable to the condition of
things existing in this country, that it can be pronounced

by the courts not to be in force because inapplicable. It existed in England, not as a part of the feudal system, as counsel seem to suppose, but was based upon general principles of public policy, having in view the protection of the kingdom from foreign influence and foreign domination,—principles not altogether unlike those which have given rise to our recent legislation re-imposing upon aliens the common law disabilities in relation to taking and holding real estate in this State. True, during most of our history as a State those disabilities have been removed; but that has been done by express legislation changing the common law rule, and not by any attempt on the part of the courts to hold the rule not in force because inapplicable.

The statute in relation to the rights of aliens in force prior to the act of June 16, 1887, was the act of February 17, 1851,—an act which seems to have superseded the chapter of the Revised Statutes of 1845 relating to aliens. The act of 1851 provided that all aliens might take, by deed, will or otherwise, lands and tenements, and any interest therein, and alienate, sell, assign and transmit the same to their heirs or any other persons, whether such heirs or other persons were citizens of the United States or not, in the same manner as natural born citizens of the United States or of this State might do, and that upon the decease of any person having title to or interest in any lands or tenements, such lands and tenements should pass and descend in the same manner as if such alien were a citizen of the United States, and that it should be no objection to any persons having an interest in such estate that they were not citizens of the United States, but that all such persons should have the same rights and remedies, and in all things be placed upon the same footing, as natural born citizens and actual residents of the United States. Gross' Stat. 1869, 7.

There can be no doubt that this statute, while it was in force, operated as a complete removal of all the dis-

abilities of alienage, so far as they affected the right of the alien to take, hold and transmit real property in this State, and that it also superseded the common law rule that the interposition of an alien ancestor between an intestate and a collateral relative claiming to inherit was a barrier to the devolution of the estate by inheritance. But by the act of 1887 the common law disabilities of alienage were in the main restored, and the act of 1851, as well as all other acts in conflict with the act of 1887, were expressly repealed.

It is a rule of the common law, that where one statute is repealed by another the repeal of the repealing statute revives the statute repealed ; and the same rule is held to extend to the common law, so that where an act which supersedes, in any particular, the common law rule previously applicable is itself repealed, the rule is held to be revived. (Endlich on Interpretation of Statutes, sec. 475; *State* v. *Rollins,* 8 N. H. 550; *Mathewson* v. *Phœnix Iron Foundry,* 20 Fed. Rep. 281; *Gray* v. *Obear,* 54 Ga. 231.) By section 3, chapter 131, of the Revised Statutes, it is provided that no act or part of an act repealed by the General Assembly shall be deemed to be revived by the repeal of the repealing act, but we have no statute affecting the rule that the repeal of a statute superseding a common law rule will have the effect of reviving the rule. It must accordingly be held that the repeal of the statute of 1851, by which the common law rule which made it impossible for a collateral to inherit where he is obliged to trace his pedigree through an alien, was changed, revived the common law rule.

But it is claimed that the rule, even if in force in this State, can have no application in the present case, because, as the complainant insists, the next of kin, under our statute, takes immediately from the intestate, and not mediately through his alien ancestors. We find nothing in the language of the statute which necessarily leads

to the conclusion contended for. It merely provides that the estate shall descend in equal parts to the next of kin of the intestate, leaving upon the party who claims the right to inherit, the burden of deducing his pedigree through a line of ancestors up to the intestate. And it will not be questioned that in this case, if any one of the ancestors through whom the complainant deduces his pedigree had been alive at the death of the intestate and capable of inheriting, the estate would have gone to him or her and not to the complainant, thus showing that such ancestor is the *medium heredatus*, and not merely the *medium sanguinis*.

Descents have long been distinguished as mediate and immediate, but as shown by Mr. Justice STORY in *Levy's Lessees* v. *McCartee*, *supra*, these terms are susceptible of different interpretations, whence some confusion has been introduced into their legal discussion, since different judges have used them in different senses. But as said by Lord HALE, as quoted in *Collingwood* v. *Pace*, *supra :* "In immediate descents there can be no impediment but what ariseth in the parties themselves, but in mediate descents, it is agreed, the disability of being an alien or attainted, in him that is the *medius antecessor*, will disable the other, though he have no such disability." In *Collingwood* v. *Pace*, which was argued before all the judges of England, the question was whether the inheritance by a brother from his brother, the father being an alien, was mediate or immediate, and it was decided, after much discussion, by seven judges against three, that the inheritance was immediate, so as not to be affected by the alienage of the father. It was held that in tracing the line of inheritance between brothers or their descendants it was not necessary to name the father as their common ancestor, and that alienism in any ancestor whom it was not necessary to name in tracing such inheritance or descent does not have the effect to impede it.

In *McGregor* v. *Comstock*, 3 N. Y. 408, the same rule was applied to an inheritance between first cousins, their fathers being citizens but whose grandfather was an alien.

Thus in *Jackson* v. *Doran*, 7 Wend. 333, the intestate was a naturalized citizen, and the claimants were the heirs-at-law of a cousin of the intestate, who was also a naturalized citizen. It was claimed that the descent between cousins was immediate, notwithstanding the circuity of the line of sanguinity, and that the alienage of their intervening relatives was no bar to the inheritance; but this claim was disallowed, it being held that while the descent from brother to brother was considered immediate, that from cousin to cousin was not, and that no one who was obliged to trace his descent through an alien can inherit real estate, the intestate having died at a time when the statute of 11 and 12 William III was not incorporated into the New York law of descent.

The same rule was applied in *Jackson* v. *Fitz Simmons*, 10 Wend. 9, where the intestate was a naturalized citizen and the claimant his nephew, but whose father, a brother of the intestate, was an alien. So in *Redpath* v. *Rich*, 3 Sandf. 79, it was held that a nephew who was obliged to trace his descent through an alien mother could not inherit from his uncle. In *McCarthy* v. *Marsh*, 5 N. Y. 205, the intestate and the claimant were second cousins and were both citizens, all their ancestors, up to their common great-grandfather, being aliens. It was held that under the New York statute, which provided that no person capable of inheriting should be precluded from the inheritance by reason of the alienage of any ancestor of such person, the claimant was entitled to the estate, but it was admitted that at common law, and in the absence of such statute, he could not inherit, because he was obliged to trace the descent of the estate through aliens who had no inheritable blood. In *People* v. *Irvin*,

21 Wend. 128, where the same statute was in force, it was held that the nephew of a person dying intestate, although naturalized, was not capable of inheriting from his uncle if his father was an alien and still living at the time of the death of the intestate, as the statute did not enable a person to deduce title through an alien ancestor still living. If, in such case, however, the descent from the uncle to the nephew was immediate, as is claimed in the case at bar, it is difficult to see how the fact that an intermediate alien ancestor was living could have the effect of barring the inheritance.

*McLean* v. *Swanton*, 13 N.Y. 535, involved substantially the same question as the case last cited. There the decedent left him surviving a sister and a niece, the former being an alien and the latter a citizen, and it was held that the niece could not take the real estate of the decedent by inheritance so long as her mother was living at the date of her uncle's death. It was urged on behalf of the niece that the existence of her mother might be disregarded, upon the doctrine laid down by Chancellor KENT, viz.: "If a citizen dies and the next heir be an alien, who can not take, the alien can not interrupt the descent to others, and the inheritance descends to the next of kin who is competent to take, in like manner as if no such alien had existed." (2 Kent's Com. 56.) This contention was disallowed and the doctrine announced by Chancellor KENT held inapplicable, the court saying: "The difficulty of this position is, that if the name of the mother be stricken from the plaintiff's genealogical chart it will not appear that she has any connection with Robert Swanton, whose heir she claims to be. The cases to which the doctrine referred to in the Commentaries applies, are those in which the claimant does not make title through the alien, but where she can deduce her pedigree from the person dying seized by leaving out or passing by the alien." And again: "All the cases de-

cided in this country where an alien would have taken the estate but for his alienage, and in which a more remote heir was preferred, were cases of the same character, the successful claimant making out his descent independent of and not through the alien. Upon the plaintiff's theory, the statute under consideration would have been quite unnecessary, for if she can be allowed to strike out her alien ancestors intervening between the person dying seized and herself, whether living or dead, and make title to the land of the person so dying seized, as his immediate heir, the defect of heritable blood in such ancestors would be a matter of no moment." The same construction of the language of Chancellor KENT is adopted in *Wunderle* v. *Wunderle*, 144 Ill. 40.

We have examined the cases cited by counsel for the complainant, where a citizen who has been compelled to trace his relationship to the intestate through an alien has been held entitled to inherit, and we find them in most (if not every) instances to be cases arising under a statute expressly giving the right to inherit in such cases. The decisions of this character in the State of New York all seem to have arisen while the statute of 11 and 12 William III, or the section of the Revised Statutes of the State substantially re-enacting that statute, was in force. The case of *Jacksons* v. *Sanders*, 2 Leigh, 109, was decided under a statute of the State of Virginia which provided that "in making title by descent it shall be no bar to a party that any ancestor through whom he derives his descent from the intestate is or hath been an alien." Similar statutes are found in several of the other States. It is scarcely necessary to remark that in this State no such statute exists.

We are of the opinion, then, that as the complainant is compelled to trace his descent from the intestate through non-resident aliens, he is barred and incapacitated from taking any interest in the real estate by in-

heritance.    The decree of the Superior Court dismissing his bill for want of equity must therefore be affirmed.

*Decree affirmed.*

Mr. JUSTICE CRAIG, dissenting.

Mr. JUSTICE BAKER: I do not feel satisfied with the conclusion reached, and am inclined to the opinion that the law well could be, and should be, held otherwise.