DINAH MEADOWCROFT *et al.*

*v.*

WINNEBAGO COUNTY *et al.*

*Opinion filed October 16, 1899.*

1. STATUTES—*terms used in a statute without explanation are given their common law meaning.* Terms contained in a statute without explanation as to the sense in which they are employed should be construed in accordance with their common law significance.

2. ALIENS—*one cannot claim estate of a bastard if kinship is traced through alien blood.* One who claims the estate of an illegitimate intestate under clause 5 of section 2 of the Statute of Descent, (Rev. Stat. 1874, p. 418,) as next of kin to the mother of such intestate, is not entitled to take, when compelled to trace kinship through alien blood.*

3. SAME—*Alien act of 1887 applies to estates of illegitimates.* The provisions of act of 1887, (Laws of 1887, p. 5,) in respect to the right of

*The authorities on inheritance by, through or from illegitimate persons are reviewed in a note to *Croan* v. *Phelps*, (Ky.) 23 L. R. A. 753, while those on an alien's right to inherit are in a note to *Easton* v. *Huott*, (Iowa,) 31 L. R. A. 177.

aliens to take and hold real estate, are applicable to the estates of illegitimates as well as legitimates.

4. SAME—*Alien act of 1897 does not affect prior vested rights by way of escheat.* The right to trace heirship to the property of an intestate through alien ancestors, conferred by section 1 of the Alien act of 1897, (Laws of 1897, p. 5,) is not applicable to property the title to which had passed by escheat to the State prior to that act.

5. ESCHEATS—*act of 1874 supersedes all previous enactments on escheats and applies to illegitimate intestates.* All previous enactments in relation to escheats were superseded by the act of 1874, (Rev. Stat. 1874, p. 479,) under section 1 of which the property of illegitimates, dying without heirs capable of holding the same, escheats to the county and not to the State, as is specified in clause 6 of section 2 of the act on descent.

APPEAL from the Circuit Court of Winnebago county; the Hon. CHARLES E. FULLER, Judge, presiding.

S. H. CUMMINS, for appellants:

The object of the framers of the Statute of Descent, concerning illegitimates, seems to have been to remove the common law disability of inheritance by illegitimates through the maternal line. *Bales* v. *Elder,* 118 Ill. 436.

Legislation giving to illegitimate children the right of succession is in derogation of the common law and should be strictly construed. *Pratt* v. *Atwood,* 108 Mass. 40; 24 Am. & Eng. Ency. of Law, 414.

A statute in derogation of the common law, which is not clearly remedial, should be strictly construed. *Rothgerber* v. *Dupuy,* 64 Ill. 451; *Finley* v. *Steele,* 23 id. 56.

The sixth clause of the second section of the Statute of Descent provides, with respect to illegitimate intestates, that "when there are no heirs or kindred the estate of such person shall escheat to the State, and not otherwise." That statute was not repealed by the Statute of Escheats in force July 1, 1874.

Repeals by implication are not favored. *Pavey* v. *Utter,* 132 Ill. 489; *Crerar* v. *Williams,* 145 id. 625.

A general statute without negative words will not repeal particular provisions of a former statute unless the

two statutes are irreconcilably inconsistent. *Covington* v. *East St. Louis,* 78 Ill. 548; *Gunnarssohn* v. *Sterling,* 92 id. 569; *Holton* v. *Daily,* 106 id. 131.

A general statute does not operate as a repeal of a former particular statute. *Hyde Park* v. *Cemetery Ass.* 119 Ill. 141.

ARTHUR H. FROST, for appellee the county of Winnebago:

The common law rule that one citizen cannot inherit from another where kinship must be traced through a non-resident alien cannot be rejected as repugnant to our institutions under a statutory adoption of the common law, so far as applicable. A statutory provision that an estate shall descend in equal parts to the next of kin does not make the descent to collateral kindred immediate, so as to avoid the effect of alienage of ancestors through whom kindred is traced. *Beavan* v. *Went,* 156 Ill. 592.

Wherever the statute does not expressly or by necessary implication remove the common law incapacity the common rule still prevails. *Bent* v. *St. Vrain,* 30 Mo. 268; *Stephenson's Heirs* v. *Sullivant,* 5 Wheat. 260; *Little* v. *Lake,* 8 Ohio, 290; *Remington* v. *Lewis,* 8 B. Mon. 606.

There is no distinction whether the alien ancestors, through whom the lineage must be traced, are living or dead. *Beavan* v. *Went,* 156 Ill. 592; *Lessees of Levy* v. *McCarty,* 6 Pet. 102.

No one can acquire title to property by descent through an alien who was himself incapable of holding title. *Walker* v. *Ferry Co.* McArthur, (D. C.) 440; *Elden* v. *Doe,* 6 Blackf. 341; *Murray* v. *Kelly,* 27 Ind. 42; *Furenes* v. *Mickleson,* 86 Iowa, 508; *Redpath* v. *Rich,* 3 Sandf. 79; *Wright* v. *M. E. Church,* Hoff. Ch. 202; *Jackson* v. *Greene,* 7 Wend. 333; *McCarty* v. *Marsh,* 5 N. Y. 263; *Jackson* v. *Fitzsimmons,* 10 Wend. 9; *McDaniel* v. *Richardson,* 1 McCord, 187; *Jackson* v. *Sanders,* 2 Lee, 109.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Richard Horsefall, a naturalized citizen of the United States, died intestate in Winnebago county, Illinois, February 1, 1894, leaving no widow, child or children, and no descendants of a child or children, seized in fee of certain real property in said county. Thereafter escheat proceedings were begun by the county under the provisions of chapter 49 of our statute, in which the deceased was found to have left no heirs and his property declared to escheat to the county. Subsequently, July 28, 1897, this suit was begun in the circuit court of that county, on the chancery side, under the provisions of chapter 49, *supra*, by certain persons, seeking to have the lands previously forfeited relinquished to them, as heirs-at-law. On May 14, 1898, the bill was amended, and the appellants, Dinah Meadowcroft and her husband, made the sole complainants. As amended it alleged that Richard Horsefall, the intestate, was the illegitimate son of Susan Horsefall, who was the daughter of another Richard Horsefall, the brother of John and William Horsefall; that the brother John was the father of James Horsefall, the father of Sally Horsefall-Clegg, who was the mother of the complainant Dinah Meadowcroft, who is the next of kin of the intestate and was a naturalized citizen of the United States at the time of intestate's death. It also appears from the bill that he had other relatives of the same or nearer degrees to him than the complainant Dinah Meadowcroft, but they are now dead or are aliens incapable of inheriting. The answer of the county denied the allegations of the bill as to relationship, but admitted the death, citizenship, residence, seizure and intestacy of Richard Horsefall, as alleged, and averred that if complainant Dinah Meadowcroft is related to him she is compelled to trace her kinship through alien ancestors, and for that reason is not entitled to take the estate. After the introduction of a large volume of evidence on the question of her kinship to deceased, the court decided

that her claim of inheritance could not be sustained and dismissed the bill at complainants' cost. From that decree this appeal is prosecuted.

The principal contention of the county on the trial was, that as complainant Dinah Meadowcroft was compelled to trace her kinship to the intestate through alien blood, she is precluded, under the act of 1887 in regard to aliens, from inheriting his property, and the chancellor hearing the cause so held. The act, applied to next of kin of legitimates who must trace their relationship to the intestate through alien ancestors, was before us in *Beavan* v. *Went,* 155 Ill. 592, and we there said, on the authorities cited (p. 607): "We are of the opinion, then, that as the complainant is compelled to trace his descent from the intestate through non-resident aliens, he is barred and incapacitated from taking any interest in the real estate by inheritance."

Appellants' counsel insist that this case is distinguishable from that, for the reason that this is not, as they claim, a common law inheritance, but purely a statutory one, there being no common law right of inheritance from or through illegitimates, except to lineal heirs. It is therefore contended the common law rule applied in the *Beavan case* has no application. The law of descent as to illegitimates, as it existed at common law, is certainly materially changed by our statute; but the same is true as to legitimates, and no good reason is or can be shown why the common law rules, so far as applicable, should not be applied to one as well as the other. The rights of aliens, under our statute of 1887, are not the same, in all respects, as they were at common law, and yet the common law rule as to tracing kinship through non-resident aliens was held applicable in the case cited. Beavan claimed under the fifth clause of section 1 of chapter 39 of the statute, the language being, "then such estate shall *descend in equal parts to the next of kin of the intestate,* in equal degree, (computing by the rules of the

civil law.")  Complainants in this case claim under the fifth clause of section 2 of chapter 39, which is: "In case there is no heir, as above provided, the estate of such person shall *descend to and vest in the next of kin to the mother of such intestate,* according to the rule of the civil law."  As we understand the position of counsel in this case, it is that the right of Dinah Meadowcroft to take the estate does not depend upon any right of her ancestors to do so, but she takes directly through the intestate as next of kin capable of inheriting.  The same contention was made in *Beavan* v. *Went, supra.*  It was there argued, that "while the right to inherit comes to him (the complainant) mediately through some person who was an alien, the statute casts the estate directly upon him."  And again: "That appellant is not allowed by the laws of this State to trace his inheritable blood through alien ancestors for the purpose of taking title to the real estate mentioned in the bill by descent, we submit is not the law of this State and never has been, and in support of our contention we refer to the following authorities,"—citing cases.  The language applicable to this case (the fifth clause, *supra,*) is: "The estate of such person shall descend to and vest in the next of kin of the mother," etc.  The words *"shall descend to and vest in,"* are substantially the same as in the fifth clause of the first paragraph, and in both the term "descent" means "the title by which one person, upon the death of another, acquires the real estate of the latter as his heir-at-law."  "Heir, at common law: he who is born or begotten in lawful wedlock, and upon whom the law casts the estate in lands, tenements or hereditaments immediately upon the death of his ancestor."  "In civil law: he who succeeds to the rights and occupies the place of a deceased person."  (Bouvier's Law Dic.)

"The term 'heir' has a very different signification at common law from what it has in those States and countries which have adopted the civil law.  In the latter,

the term applies to all persons who are called to the succession, whether by the act of the party or by operation of law. The person who is created universal successor by a will is called the testamentary heir, and the next of kin by blood is, in cases of intestacy, called the heir-at-law or heir by intestacy." 1 Brown on Civil Law, 344; Story on Conflict of Laws, 508.

In *Carpenter* v. *State,* 4 How. (Miss.) 163, (34 Am. Dec. 116,) Smith, J., said: "It is a general rule that where terms used in the common law are contained in the statute or the constitution, without an explanation of the sense in which they are there employed, they should receive that construction which has been affixed to them by the former." Under this rule, if the ordinary legal meaning is given to the words of our statute relating to illegitimates, the common law, so far as applicable, must become a part of the statute.

It is again urged that this statute is in derogation of the common law, by which the estate of an illegitimate escheated to the crown in the event of a failure of lineal descendants, and should be strictly construed. The general rule that statutes in derogation of the common law are to be strictly construed has been repeatedly recognized by this court, and its application to statutes similar to the one under discussion by those States recognizing that rule is not doubted. But we are unable to see wherein appellants' contention in this case is thereby aided. No good reason is, or, as we believe, can be, shown why one claiming from a relative cannot inherit, if compelled to trace his kinship through alien ancestors, when the relative is legitimate, but can if he is illegitimate. The object of the act of 1887 is to limit the power of aliens, or, as construed in the *Beavan case,* those claiming through aliens, to acquire lands in this State, and that statute, with all the rules of construction applicable thereto, should be applied to the estates of illegitimates as well as legitimates.

Appellants also invoke the aid of the later act of 1897, (Laws of 1897, sec. 1, p. 6,) to enable Dinah Meadowcroft to trace her heirship to the property of the intestate through alien ancestors. That act provides that "no person shall be deprived of his right to take title to real estate as heir-at-law, by descent from any deceased person, because he may be * * * compelled to trace his relationship to such deceased person through one or more aliens;" but we cannot see how it can be applied to this case, the title to the property in question having vested prior to its taking effect. As already stated, the intestate died February 1, 1894. In *Wallahan* v. *Ingersoll*, 117 Ill. 123, we said: "When the owner of property dies intestate, without heirs capable of inheriting it, the title thereof devolves, by operation of law, upon the State,"— citing *Crane* v. *Reeder*, 21 Mich. 24, *Dow* v. *Ohanlon*, 1 N. J. 582, *Commonwealth* v. *Hite*, 6 Leigh, 588, and *People* v. *Cultoy*, 3 Johns. 1. (See, also, sec. 1 of chap. 49, *supra*.) This principle was again recognized in *Wunderle* v. *Wunderle*, 144 Ill. 40, where we said, "that for information of title or as a means of proving title by escheat it was necessary that the provisions of the statute concerning escheats be complied with." Therefore, the subsequent act cannot be held applicable here without divesting or impairing vested rights, to hold which would render the act unconstitutional and void.

Appellants further contend that by the Escheat law of 1872 the estates of illegitimates dying without heirs or kindred escheated to the State, and that the law of 1874, making general provisions for escheats to go to the county in which the greater portion is situated, did not affect the law in force then, concerning illegitimates dying without issue, etc. Assuming this position to be sound, they contend the State had a right to pass the law of 1897, impairing its own rights. As to the conclusions sought to be thus drawn, it is sufficient to say that the act of 1897 does not in anywise purport to divest the title

to property, even if the title were held to be in the State. But we are convinced that section 1 of chapter 49, entitled "Escheats," (Starr & Cur. Stat. p. 1058,) was intended to supersede all previous enactments in relation to that subject, and hence the law now is that the property of illegitimates dying without heirs capable of holding the same escheats to the county and not to the State. That the escheat proceedings may have been defective is immaterial under the views here expressed.

The decree of the circuit court must be affirmed.

*Decree affirmed.*